#27094-aff in pt & rev in pt-LSW

**2015 S.D. 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JENNIFER L. HILLER,                           Plaintiff and Appellee,

    v.

JAMES D. HILLER,                              Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE GREGORY J. STOLTENBURG
Judge

* * * *

STACY F. KOOISTRA
SHARLA B. SVENNES of
Myers Billion, LLP
Sioux Falls, South Dakota                     Attorneys for plaintiff
                                              and appellee.


KENNETH M. TSCHETTER of
Nicholson, Tschetter, Adams & Nicholson
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015

OPINION FILED **07/01/15**

#27094

WILBUR, Justice

[¶1.]     The circuit court distributed the marital assets of James and Jennifer

Hiller by divorce decree.  The court ordered that James assume all of the marital

debt but $500,000 and ordered James "to make best efforts with the bank and

cooperate to remove [Jennifer] from the liabilities as otherwise provided herein."

James did not remove Jennifer from the assigned liabilities.  As a result, the court

ordered that it would compel James to sell personal property if he does not remove

Jennifer from his assigned liabilities by March 15, 2015.  James appeals.  We affirm

in part and reverse in part.  We reject both parties' requests for attorney's fees.

### Background

[¶2.]     James and Jennifer were married in 1997.  Two children were born

from this marriage.  Throughout their marriage, James and Jennifer operated a

family farming business.  James and Jennifer rented and farmed land owned by

James's parents.  James's parents eventually sold James and Jennifer the land and

the house located on the property (Home Quarter).  James, Jennifer, and their two

children lived at the Home Quarter.  In 2007, James and Jennifer purchased

adjacent farmland (New Quarter).  The parties contributed equally to the

accumulation of property during their marriage.

[¶3.]     Jennifer filed for divorce on September 9, 2012.  The circuit court

entered a divorce decree on June 6, 2013.  The parties did not have a premarital

agreement.  In dividing the marital property, the court made a concerted effort to

fashion an equitable division that maintained the viability of the farming operation.

The court noted that there was a significant difference in total value between the

-1-

Home Quarter and the New Quarter. The value of the Home Quarter was $1,580,000, while the value of the New Quarter was $1,365,700. As of January 7, 2013, the amount of liabilities of the parties was valued at $2,453,159.

[¶4.] The court awarded James the Home Quarter and most of the farm assets (Farming Operation).[1] The court awarded Jennifer the New Quarter. To equalize the distribution of marital property between James and Jennifer, the court ordered James to assume all of the marital debt but $500,000 and required James to pay Jennifer, over time, a cash equalizing payment of $150,000. In an effort to require the removal of Jennifer from James's assigned liabilities, the court ordered that "[James] shall make best efforts with the bank and cooperate to remove [Jennifer] from the liabilities as otherwise provided herein." (Refinancing Provision). The Refinancing Provision is the primary subject of this appeal.

[¶5.] Neither party appealed the divorce decree.[2] Ultimately, James did not secure refinancing of the Home Quarter. First National Bank approved the

---

1. The Farming Operation included all "current and intermediate" farm assets, all machinery, equipment, and all of the vehicles with the exception of a 2003 GMC pickup truck and a horse trailer.

2. On June 25, 2013, James filed a motion asking the circuit court to enforce the divorce decree and order Jennifer to reimburse him for the cost of fertilizer that was previously applied to the New Quarter. However, in the original divorce decree, the circuit court explicitly found "[t]hat there was no testimony regarding compensation for fertilizer applied by [James] on New Quarter." In denying James's motion, the court found that it had made an equitable distribution of the marital estate at trial. The court noted that it had asked James at the close of trial whether he wanted to reopen the property division and James declined.

refinancing of the Home Quarter, but the approval was contingent on the approval of Farm Service Agency. Farm Service Agency denied the refinancing because the New Quarter had been removed from the asset base. Farm Credit Services and First Dakota National Bank also denied James the refinancing. Because James did not remove Jennifer from his assigned liabilities, Jennifer filed a motion on August 30, 2013, asking the court to issue an order requiring James to sell as much property as necessary to remove her from James's assigned liabilities. As support for this argument, Jennifer alleged that James had not complied with the Refinancing Provision. In response, James filed a motion on September 4, 2013, asking the court to restructure the division of marital property to assist him in removing Jennifer from his assigned liabilities. James asked the court to transfer the New Quarter to him and order him to pay Jennifer the value of the property over a period of time.

[¶6.]       On October 7, 2013, the circuit court granted Jennifer's motion for the sale of James's property and denied James's motion to restructure the division of marital property. The court ordered that "[James] shall refinance or restructure the existing debt of the farming operation in order to remove [Jennifer] from all debt in excess of Five Hundred Thousand Dollars ($500,000) as previously ordered by the [c]ourt." The court imposed a deadline of March 1, 2014, to complete this refinancing or restructuring of debt. The court stated that "in the event of [James's] failure to refinance or restructure said debt by March 1, 2014, the [c]ourt shall revisit the issue as to the sale of the property at that time[.]"

[¶7.]	James did not refinance or restructure the debt by the imposed deadline.  On March 7, 2014, James sought relief from the divorce decree under SDCL 15-6-60(b).  James argued that the circuit court mistakenly relied on Dave Knudsen's testimony at the divorce trial in concluding that James could obtain refinancing.  At trial, Knudsen—a thirty-five-year employee and agricultural lender at First National Bank—testified about a potential resolution of the property distribution.  Knudsen presented a hypothetical situation wherein Jennifer assumed only $500,000 of the marital debt with the New Quarter as the collateral.  Knudsen said this may be sufficient to allow James to refinance the homestead and remove Jennifer as a co-signer: "Again, with the ag loan committee approval, that's something we can talk about, yes."  Then, during cross-examination, Knudsen testified that the bank could "probably" release both the New Quarter as collateral, and Jennifer as co-signer, through refinancing.  In support of his motion for relief under SDCL 15-6-60(b), James submitted an affidavit from Knudsen stating that the removal of the New Quarter as collateral "essentially ruined any possibility of refinancing."

[¶8.]	The circuit court conducted a hearing on the motion on March 24, 2014, and entered findings of fact, conclusions of law, and an order on May 2, 2014 (Order).  The court denied James's motion for relief.  The court found that "[James] is requesting that the [c]ourt reopen the property division in the present matter," but the "property division was decided at the time of the divorce and is closed."  The court further found that James failed to establish a basis for relief under SDCL 15-6-60(b).

[¶9.]     The Order required James to sell the Home Quarter "to the extent necessary such that, along with [Jennifer's] required payment of $500,000, [Jennifer] is relieved of her obligation to the marital debt." The circuit court extended the deadline to sell the Home Quarter from March 1, 2014, to March 15, 2015.[3] As a caveat, the court noted, "Should [James] obtain the release of [Jennifer] from said debt prior to the time of sale, then the sale of Home Quarter need not occur." But, "[i]f the sale of Home Quarter is not sufficient to release [Jennifer] from said debt, [James] must sell other farm assets to attain [Jennifer's] removal from the debt." James raises the following issues for our review:

1.   Whether the circuit court had authority to grant Jennifer's motion for sale of James's farmland or farming operations.

2.   Whether the circuit court abused its discretion in refusing to consider or divide the costs and taxes incurred by the forced sale.

3.   Whether the circuit court abused its discretion in denying James's SDCL 15-6-60(b) motion for relief from judgment and request to restructure the property division.

## Analysis

[¶10.]    **1.    Whether the circuit court had authority to grant Jennifer's motion for sale of James's farmland or farming operations.**

[¶11.]    James argues that the circuit court's order granting Jennifer's motion for sale of property constituted an improper modification of the property division

---

3.    The court acknowledged that there was "not sufficient time for [James] to sell Home Quarter prior to spring planting[,]" and that "[o]rdering an immediate sale of Home Quarter would risk the land lying fallow for the 2014 crop year."

because it "impermissibly orders the sale of property previously awarded to him in fee simple in the divorce." In response, Jennifer contends that the Order merely clarified and enforced the Refinancing Provision and did not "materially alter[] the rights and responsibilities of the parties[.]"[4]

[¶12.]     The long-standing law of this State is "that the division of property pursuant to a divorce decree is not subject to modification." *Sjomeling v. Sjomeling*, 472 N.W.2d 487, 489 (S.D. 1991). "Absent fraud or some other reason which would apply to any judgment, a divorce decree which incorporates a property settlement agreement is a final and conclusive adjudication and is not subject to later modification." *Duran v. Duran*, 2003 S.D. 15, ¶ 15 n.2, 657 N.W.2d 692, 698 n.2 (quoting *Beermann v. Beermann*, 526 N.W.2d 127, 129 (S.D. 1995)). While the circuit court generally must not modify the division of the marital property, the court may enter an order enforcing or clarifying the divorce decree. *Sjomeling*, 472 N.W.2d at 490; *Hisgen v. Hisgen*, 1996 S.D. 122, ¶ 9, 554 N.W.2d 494, 497. "[A]s a general rule, courts retain jurisdiction to make such further orders as are

---

4.     Jennifer further argues that James's appeal is untimely because he was required to appeal either the initial divorce decree or the October 7, 2013 order granting her motion for sale of property. We reject this argument and conclude that James appropriately appealed the May 2, 2014 order. The initial divorce decree did not order the sale of personal property or the Home Quarter. Likewise, the October 7, 2013 order was not a final order. "This Court's appellate jurisdiction is limited to 'appeals only from a final order or judgment.'" *In re Estate of Geier*, 2012 S.D. 2, ¶ 7, 809 N.W.2d 355, 357 (quoting *Link v. L.S.I., Inc.*, 2010 S.D. 103, ¶ 43, 793 N.W.2d 44, 57). While the October 7, 2013 order did grant Jennifer's motion for sale of property, the circuit court noted that it would "revisit the issue as to the sale of the property [on March 1, 2014]." The October 7, 2013 order did not conclusively or finally dispose of the issues on appeal.

appropriate to compel compliance with its judgment." *Sjomeling*, 472 N.W.2d at 490 (citing 24 Am. Jur. 2d, *Divorce and Separations* § 959). Similarly, "[w]hile a property division is irrevocably fixed by the terms of the divorce decree and cannot be later modified, if indeterminate language was employed, a court may clarify its decree[.]" *Hisgen*, 1996 S.D. 122, ¶ 9, 554 N.W.2d at 497.

[¶13.] Jennifer argues that the circuit court's order granting Jennifer's motion for sale of property constituted an enforcement rather than a modification of the Refinancing Provision. She contends that *Sjomeling* is analogous to this case. *See* 472 N.W.2d at 489. In *Sjomeling*, the circuit court ordered the defendant to pay the plaintiff a property settlement adjustment in four annual installments to equalize the equities between the parties pursuant to their divorce. *Id.* After the defendant failed to make a timely payment, the plaintiff petitioned to show cause regarding the missed payment. The court ordered the defendant to make payment within 60 days or the entire property division debt would be accelerated. We held on appeal that the acceleration "in no manner modified the division of the marital property; it merely modified the method of distribution of the property settlement adjustment." *Id.* at 490.

[¶14.] The present case is factually distinguishable from *Sjomeling*. In *Sjomeling*, the circuit court accelerated the property division debt that was already owed to the plaintiff. *Id.* The amount of debt ultimately paid by the defendant to the plaintiff did not change by the acceleration of the debt. Therefore, the acceleration did not modify the division of marital property. Moreover, the plaintiff in that case petitioned to show cause regarding the missed payment. There has

been no such petition in this case. In this case, the divorce decree vested James with title and interest in the Home Quarter and the Farming Operation. The Refinancing Provision did not condition James's ownership of the Home Quarter and his other farm assets on the removal of Jennifer from the debt. In fact, the court explicitly found that James's "capacity to produce a living is tied into the farming operation." The forced sale stands to divest James of his ownership interest in the Home Quarter and remove James from his home. This was not contemplated by the Refinancing Provision. Therefore, we reject Jennifer's reliance on *Sjomeling*.

[¶15.] Jennifer argues that although the Order could disrupt James's livelihood, the forced sale does not materially change the equity of the division of marital property. She contends that the forced sale, instead, merely seeks to enforce compliance with the Refinancing Provision—i.e., that James remove her from the assigned liabilities. The language of the Refinancing Provision, however, does not support Jennifer's broad assertion. The Refinancing Provision provided: "[James] shall make *best efforts* with the bank and *cooperate* to remove [Jennifer] from the liabilities as otherwise provided herein." (Emphasis added.) The Refinancing Provision did not "simply order[] James to remove Jennifer from the liabilities" as Jennifer contends. To recognize Jennifer's interpretation would render meaningless the instruction that James use his "best efforts" and "cooperate" to remove Jennifer from the liabilities. Certainly, there would be no need for James to use his best efforts and cooperate if James was merely required to remove Jennifer from the liabilities.

[¶16.] There has been no showing in this case nor did the circuit court find at any point in the underlying proceedings that James failed to "make best efforts with the bank" or "cooperate" to remove Jennifer from the assigned liabilities. The record reflects that James attempted to obtain refinancing from First National Bank, Farm Credit Services, and First Dakota National Bank. Farm Credit Services and First Dakota National Bank denied refinancing. While First National Bank initially granted refinancing, the refinancing was ultimately denied after failing to garner the requisite approval by Farm Service Agency. It is no surprise that James was denied refinancing considering the fact that the collateral for the parties' debt (the New Quarter) was removed from the asset base. Nonetheless, the court disregarded consideration of whether James's attempts at refinancing constituted making "best efforts with the bank" and "cooperat[ing] to remove Jennifer from the liabilities," and instead granted Jennifer's motion for sale of property.

[¶17.] The forced sale erroneously treats James as if he is in contempt of court. Jennifer did not file a motion for contempt, and the court did not issue an order to show cause concerning James's failure to comply with the Refinancing Provision. "The purpose of the civil contempt proceeding is to force a party 'to comply with orders and decrees issued by the court in a civil action for the benefit of an opposing party.'" *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 23, 729 N.W.2d 335, 344 (quoting *Wold Family Farms, Inc. v. Heartland Organic Foods, Inc.*, 2003 S.D. 45, ¶ 14, 661 N.W.2d 719, 723). The four elements of contempt are "(1) existence of an order, (2) knowledge of that order, (3) ability to comply with the

order, and (4) willful or contumacious disobedience." *Talbert v. Talbert*, 290 N.W.2d 862, 864 (S.D. 1980). The circuit court did not make any determination regarding the elements of contempt.

[¶18.] Consequently, the circuit court exceeded mere enforcement or clarification of the Refinancing Provision when it ordered the forced sale of property. This order impermissibly modified the property division. *See Robertson v. Robertson*, 376 N.W.2d 733, 735-36 (Minn. 1985) (holding that the circuit court's order selling property constituted an improper modification of the divorce decree); *Johnson v. Lowary*, 81 S.D. 202, 205, 132 N.W.2d 823, 824-25 (1965) (holding that the court order divesting wife of her interest in property constituted an improper modification of the property division); *Van Diepen v. Van Diepen*, 73 S.D. 366, 369, 43 N.W.2d 499, 500-01 (1950) (holding that the court order terminating the husband and wife's joint ownership interest constituted an improper modification of the property division despite both parties agreeing to the modification). Because we hold that the forced sale was an improper modification of the division of marital property, we need not address James's argument that the circuit court abused its discretion in refusing to consider or divide the costs and taxes incurred by the forced sale.

[¶19.] **2. Whether the circuit court abused its discretion in denying James's SDCL 15-6-60(b) motion for relief from judgment and request to restructure the property division.**

[¶20.] James argues that the circuit court abused its discretion when it denied his SDCL 15-6-60(b) motion to re-open the property division. However, in James's initial claim for relief to the circuit court, he did not request relief under

any specific subsection of SDCL 15-6-60(b).[5]  In the Order, the circuit court found that James "failed to establish a basis for relief from the [c]ourt's existing Judgment and Decree of Divorce under any and all subsections of Rule 60(b)."

[¶21.]     "Relief under SDCL 15-6-60(b) is granted only upon a showing of exceptional circumstances." *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 17, 618 N.W.2d 725, 728 (quoting *Hrachovec v. Kaarup*, 516 N.W.2d 309, 310 (S.D. 1994)).  "The purpose of Rule 60(b) is 'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.'" *Hrachovec*, 516 N.W.2d at 310 (quoting *Peterson v. La Croix*, 420 N.W.2d 18, 19 (S.D. 1988)).  The circuit court's decision to grant or deny

---

5.     SDCL 15-6-60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistake, inadvertence, surprise, or excusable neglect;
>
> (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under § 15-6-59(b);
>
> (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4) The judgment is void;
>
> (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (6) Any other reason justifying relief from the operation of the judgment.

relief under Rule 60(b) will not be disturbed on appeal unless the circuit court abused its discretion. *Pesicka*, 2000 S.D. 137, ¶ 18, 618 N.W.2d at 728.

[¶22.] "Rule 60(b) . . . is not a substitute for an appeal. It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable." *Lowe v. Schwartz*, 2006 S.D. 48, ¶ 10, 716 N.W.2d 777, 779 (quoting *Sjomeling v. Stuber*, 2000 S.D. 103, ¶ 14, 615 N.W.2d 613, 616) (internal quotation marks omitted). Thus, "an appeal from a Rule 60(b) decision does not bring the original judgment up for review, but only the decision on the request for relief from the judgment under Rule 60(b)." *Rabo Agrifinance, Inc. v. Rock Creek Farms*, 2013 S.D. 64, ¶ 14, 836 N.W.2d 631, 637 (quoting *Lowe*, 2006 S.D. 48, ¶ 10, 716 N.W.2d at 779).

[¶23.] For the first time on appeal, James prays for relief specifically under Rule 60(b) subsections (1), (2), and (6). James argues that the circuit court mistakenly relied on Knudsen's trial testimony, and new evidence indicates that compliance with the Refinancing Provision was impossible. James did not advance these arguments in the original pleading nor did he request relief under any specific subsection of Rule 60(b). Therefore, James failed to preserve appellate review of these arguments. We decline to address these arguments that James has now made for the first time on appeal. "We have repeatedly stated that we will not address for the first time on appeal issues not raised below." *Hall v. State ex rel. S.D. Dep't of Transp.*, 2006 S.D. 24, ¶ 12, 712 N.W.2d 22, 26.

[¶24.] The basis for James's Rule 60(b) motion during the circuit court proceedings was that he was unable to obtain refinancing from the bank. James

requested that the court award him the New Quarter and then order him to make payment to Jennifer to maintain an equitable property division. James's inability to obtain refinancing from the bank did not amount to exceptional circumstances warranting relief under Rule 60(b). Although James was not able to initially obtain refinancing, James may be able to obtain refinancing by reducing his own debt first. The circuit court will not grant relief under Rule 60(b) "merely because a party is unhappy with the judgment." *Lowe*, 2006 S.D. 48, ¶ 13, 716 N.W.2d at 780 (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2858, at 276 (2d ed. 1995)). James has failed to demonstrate exceptional circumstances to reopen the property division. Therefore, the circuit court did not abuse its discretion when it denied James's Rule 60(b) motion. James has had ample opportunity to litigate the initial property division. *See id.* (quoting *Stuber*, 2000 S.D. 103, ¶ 14, 615 N.W.2d at 616).

## Appellate Attorney's Fees

[¶25.] Finally, we consider James's and Jennifer's request for appellate attorney's fees. Both parties moved for appellate attorney's fees under SDCL 15-26A-87.3. A party may request attorney's fees "in actions where such fees may be allowable[.]" SDCL 15-26A-87.3. "The court, if appropriate, in the interests of justice, may award payment of attorneys' fees in all cases of divorce[.]" SDCL 15-17-38. Here, an award of attorney's fees would be contrary to the interests of justice.

**Conclusion**

[¶26.]     The circuit court abused its discretion when it impermissibly modified the marital property division by forcing James to sell property if he did not restructure or refinance prior to the March 15, 2015 deadline.  We reverse the Order to the extent that it ordered James to sell his property.  However, the circuit court did not abuse its discretion when it denied James's Rule 60(b) motion.  We reject both parties' request for appellate attorney's fees.

[¶27.]     ZINTER, SEVERSON, and KERN, Justices, and LONG, Circuit Court Judge, concur.

[¶28.]     LONG, Circuit Court Judge, sitting for GILBERTSON, Chief Justice, disqualified.