#30520-r-SPM

**2025 S.D. 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE ESTATE OF
ALICE M. MACK, deceased.

and

IN THE MATTER OF THE PHILIP D. MACK
TESTAMENTARY TRUST.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT L. SPEARS
Retired Judge

* * * *

RONALD A. PARSONS, JR. of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota

PAMELA R. REITER of
Reiter Law Firm LLC
Sioux Falls, South Dakota                    Attorneys for appellant Robert
                                             Mack.

* * * *

ARGUED
OCTOBER 1, 2024
OPINION FILED **02/12/25**

\* \* \* \*

JOSEPH B. ERICKSON
LEE SCHOENBECK of
Schoenbeck & Erickson, P.C.
Watertown, South Dakota

VINCENT A. FOLEY
Foley and Foley Law Office, P.C.
Watertown, South Dakota                    Attorneys for appellees Eric
                                           Mack and Hugh Mack.


THOMAS J. LINNGREN of
Green, Roby, Oviatt, LLP
Watertown, South Dakota                    Attorneys for appellee Neal
                                           Mack.

#30520

MYREN, Justice

[¶1.] Robert Mack is a beneficiary of his mother's will and his father's testamentary trust. After both of his parents passed away and following extended probate proceedings, his brothers Hugh and Eric, co-personal representatives of their mother's estate and co-trustees of their father's trust, filed a petition for distribution to Robert. The circuit court approved the distribution after Robert's attorney appeared at the hearing on the matter and did not object to the proposed distribution. Robert obtained new counsel and filed a motion for relief from the order of distribution under SDCL 15-6-60(b). The circuit court denied the motion, and Robert appeals that denial. We reverse and remand with direction to grant the motion for relief from the order of distribution.

## Factual and Procedural Background

[¶2.] Phillip and Alice Mack farmed roughly 950 acres in Codington County. The couple had five children: Robert, Hugh, Eric, Neal, and Anita. Phillip and Alice executed similar wills, each of which provided for the creation of a testamentary trust upon each other's passing. Pursuant to the terms of the testamentary trust, the trust income was to be paid to the surviving spouse for the remainder of their life. After the surviving spouse passed, the remaining trust principal was to be distributed equally among the children.

[¶3.] When Phillip passed away in 2012, Alice and Eric became co-trustees of the Phillip D. Mack Testamentary Trust. The farmland and other assets were transferred into the trust. Robert was the only child who stayed on the farm and worked the land. Alice administered the trust for the next six years. When Alice

-1-

passed away in 2018, Hugh took her place as co-trustee of Phillip's trust. Hugh and Eric were also named co-personal representatives of Alice's estate.

[¶4.] The co-personal representatives filed a petition for court approval to sell farm equipment, personal property, and real estate. Robert objected to this petition. Before the circuit court heard argument on the petition, the parties purportedly reached an agreement to resolve their differences without the court's assistance. Before the agreement was finalized, Robert's attorney withdrew and was replaced by Brian Donahoe.

[¶5.] Robert filed a petition to remove Hugh and Eric as co-personal representatives and co-trustees. After hearing testimony from one witness, the circuit court granted an oral motion to continue the hearing until after the completion of a separate jury trial related to the current proceeding.[1]

[¶6.] After the jury trial, Robert filed a petition for the appointment of a special administrator, modification of the trust, and removal of the co-personal representatives and co-trustees. The circuit court heard oral arguments on that petition and denied Robert's requests. At the same time, the circuit court granted

---

1. The jury trial was set to resolve Robert's civil claims against his brothers, his mother's estate, and his father's trust. Robert claimed to have formed a farming partnership with his father prior to his passing and that the actions taken by the co-representatives and co-trustees violated his rights as a partner. Specifically, Robert's claims included: conversion, conspiracy, breach of fiduciary duty, breach of contract, and unjust enrichment. In response, the Estate of Alice Mack counterclaimed for assault/battery and intentional infliction of emotional distress. The jury rejected Robert's claims and awarded damages to the Estate. The jury set damages as follows: $25,000 for assault/battery; $25,000 for intentional infliction of emotional distress; and $200,000 in punitive damages. Judge Spears presided over this jury trial. Robert's appeal of this judgment was dismissed because Donahoe did not file an appellate brief.

the motion of the estate and trust to reduce Robert's distribution under the will by the amount of the jury verdict rendered against him.

[¶7.] Hugh and Eric, as co-personal representatives and co-trustees, filed a petition for a distribution to Robert that would satisfy his rights under his mother's will and his father's trust minus the amount owed from the jury verdict. Neither Donahoe nor Robert personally appeared at the hearing set for that motion, so the circuit court contacted Donahoe by telephone. The circuit court did not contact Robert, and he did not participate in that hearing. The circuit court observed: "There was no objection filed, but I assume now, Mr. Donahoe, you're appearing on behalf of your client to object, am I correct?" Donahoe responded: "No, Your Honor." After discussing an interest rate error in the proposed distribution, the circuit court asked: "You have no objections to this proposal other than the error in the interest calculation, is that still correct?" Donahoe responded: "Yes, Your Honor." After receiving no objections to the proposed distribution, the circuit court entered an order consistent with the petition on May 4, 2023. Donahoe received notice of entry of the order for distribution on May 17, 2023.

[¶8.] Donahoe's law license was temporarily suspended on June 6, 2023. This Court's temporary suspension order stated that the Disciplinary Board of the State Bar of South Dakota filed the petition for temporary suspension on February 8, 2023, nearly two months before the hearing on the petition for proposed distribution.[2] Robert hired Pamela Reiter to replace Donahoe. Reiter filed several

---

2. Pursuant to SDCL 16-19-35.1, a temporary suspension order can only be entered "pending full investigation, where the attorney poses a risk of danger

(continued . . .)

motions on Robert's behalf, including a motion for relief from the order for distribution under SDCL 15-6-60(b)(6) (Rule 60(b)(6)). Robert's main contention was:

> Attorney Donahoe did not have the authority to state at the [distribution] hearing that [Robert] did not have any objections to the petition for distribution. His failure to inform his client of the Petition for Distribution, the [distribution] hearing, the [circuit court's] Order for Distribution, or the Notice of Entry of the Order for Distribution, were further breaches of his fiduciary obligations to his client and demonstrate that there are exceptional circumstances warranting relief under Rule 60(b)(6).

[¶9.] Robert also submitted an affidavit that included the following statements under oath: "I have not received any communication from Mr. Donahoe in 2023"; "I did not have any knowledge of, or receive copies of, the Personal Representatives' Petition for Distribution, the Notice of Hearing on the Petition for Distribution, or the [circuit court's] Order for Distribution"; "Mr. Donahoe never spoke with or communicated with me in any manner regarding what I now understand was a Petition for Distribution"; "Mr. Donahoe did not have authority from me to act with regard to the [distribution] hearing[.]" Eric submitted an affidavit that described the values of the items Robert was set to receive via the proposed distribution. However, this affidavit did not explain the method used to calculate those values.

---

(. . . continued)

> to clients, clients' property, or the public," or the board can demonstrate a substantial likelihood that discipline will result in suspension or disbarment. On August 10, 2023, this Court entered an order transferring to medical inactive status, prohibiting Donahoe from practicing law "until further order of the Court." The August 10 order recited that the Board's petition to transfer to medical inactive status, filed on June 8, raised "serious concerns about [Donahoe's] ability to practice law."

[¶10.] At the hearing on the motion, Robert asserted that he was entitled to relief under Rule 60(b)(6) because: "an attorney representing to the Court that he has the authority of his client to agree to a disposition of a . . . seven million dollar estate . . . when he knows he has never spoken to his client, is extraordinary and exceptional circumstances." Robert also argued that because the probate proceedings were not finished, any distribution Robert would receive under the order might not accurately reflect the share of the estate he was entitled to receive. On this point, Robert made clear that he was not asking the circuit court to deny the petition for distribution but was requesting an evidentiary hearing regarding the value of the assets he was set to receive before any distribution order was entered.

[¶11.] In response, the estate and trust argued: "I find it personally a little incredible that [Robert] Mack would never have made any attempt from the fall of 2022 to August of 2023, to have had any communication with [Attorney] Donahoe[.]" The circuit court acknowledged this concern, explaining:

> Well, that's a huge credibility issue I'm going to - - you're right that I'm going to have to determine based on the observations that I've had numerous court appearances concerning the conduct of [Robert].
>
> And for the benefit of counsel here, the Court can form any conclusions about a witness or a party to a lawsuit as long as those conclusions and observations are made in a formal court proceeding, and I don't apologize for any of that.

The estate and trust also argued that under the terms of the order for distribution, Robert would receive one-fifth of the estate, accounting for interest, and Robert

would suffer no prejudice because that was the amount he was entitled to under the will. Notably, no witnesses testified at the hearing.

[¶12.] The circuit court issued a memorandum decision and denied Robert's motion for relief under Rule 60(b)(6). Robert appeals.

**Standard of Review**

[¶13.] "The circuit court's decision to grant or deny relief under Rule 60(b) will not be disturbed on appeal unless the circuit court abused its discretion." *Hiller v. Hiller*, 2015 S.D. 58, ¶ 21, 866 N.W.2d 536, 543 (citing *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 18, 618 N.W.2d 725, 728). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850 (quoting *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910).

[¶14.] "Pursuant to an abuse of discretion standard of review, factual determinations are subject to a clearly erroneous standard." *State v. Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d 201, 203. Under the clearly erroneous standard:

> The question is not whether this Court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. This Court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence. Doubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the successful party's "version of the evidence and all inferences fairly deducible therefrom which are favorable to the court's action."

*Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222 (citation omitted).

**Decision**

***Whether the circuit court abused its discretion when it denied Robert's motion for relief under Rule 60(b)(6).***

[¶15.]       Rule 60(b)(6) provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) Any other reason justifying relief from the operation of the judgment."[3]  Rule 60(b)(6) "does not particularize the factors that justify relief, but . . . it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances[.]'" *Rabo Agrifinance, Inc. v. Rock Creek Farms*, 2013 S.D. 64, ¶ 25, 836 N.W.2d 631, 640 (alteration in original) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64, 108 S. Ct. 2194, 2204, 100 L. Ed. 2d 855 (1988)).

[¶16.]       Several principles may guide the court when ruling on a Rule 60(b) motion.  Among these principles is the notion that Rule 60(b) exists "to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D. 1994) (citation omitted).  In furtherance of that command, "there is much more reason for liberality in reopening

---

3.       Ordinarily, when applying SDCL 15-6-60(b), a court should not rely on the "catchall provision" in subsection 6 if other subsections are applicable. *See Estate of Nelson*, 1996 S.D. 27, ¶ 16, 544 N.W.2d 882, 886 ("This catchall is not to be resorted to when one of the other specific sections of the statute applies.").  None of the other subsections are applicable to this factual circumstance.

a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." *Geier v. Geier*, 2013 S.D. 24, ¶ 18, 828 N.W.2d 804, 809 (quoting *Lowe v. Schwartz*, 2006 S.D. 48, ¶ 12, 716 N.W.2d 777, 780). However, Rule 60(b) "is not a substitute for an appeal. It does not allow relitigation of issues that have been resolved by the judgment." *Lowe*, 2006 S.D. 48, ¶ 10, 716 N.W.2d at 779 (citation omitted).

[¶17.] The parties dispute the nature of the circuit court's assessment of Robert's claim that he did not have notice of the proposed distribution. In its memorandum decision, the circuit court began its analysis by setting out credibility questions concerning the dispute between the parties about whether Robert's claim that he did not have notice of the petition for distribution or hearing. It explained:

> Robert Mack now contends that he did not have notice of the hearing on April 25, 2023, because he has not talked to his former attorney since late November of 2022. In addition, Mr. Robert Mack claims he had no idea that his appeal in the above matters was dismissed due to his former attorney's failure to file a timely brief. I find this claim to be simply not credible based on Mr. Robert Mack's previous conduct during numerous court proceedings. Based on my observations from the bench, Robert Mack attempted to control the proceedings through two previous attorneys, agreed to certain things prior to hearings, then changed his mind at certain hearings, and disagreed with the simplest, strait [sic] forward legal matters. When that failed, he engaged in conduct I will describe as aggression directed toward tenants, and buyers of certain equipment which resulted in this Court entering two separate protection orders against him. His aggression resulted in part, to his mother filing an eviction proceeding against him which this Court also granted.

> Subsequent to the eviction proceeding, Robert Mack's mother was so afraid of him she moved out of her home for a ten-day period and had a friend check her mail. These are just a few examples as to why this Court does not find the claim of Robert Mack to be credible.

[¶18.]     Although the circuit court's initial remarks suggested it was making a credibility determination, it is unclear whether that was related only to Robert's claim of disengagement or also included his claim that his attorney had not provided him notice of the proposed distribution. Divining the circuit court's intent is further complicated by the fact that, later in the memorandum decision, it explicitly proclaimed its uncertainty about whether Robert's claim related to notice was untruthful:

> I am not certain that Robert Mack's claim regarding the lack of communication between Robert Mack and his former attorney is accurate and that he did not have notice of the April 2023 hearing and entry of the final Order.

[¶19.]     Although the initial paragraphs appear to be framed as a credibility assessment, the circuit court was discussing its assessment of Robert's character. While related, credibility and character are distinct. Credibility is "[t]he quality that makes something (as a witness or some evidence) worthy of belief." *Credibility*, Black's Law Dictionary (12th ed. 2024). In other words, an assessment of credibility is an assessment of truthfulness or untruthfulness. Conversely, character is a broader concept defined as "[t]he traits or qualities that combine to make an individual human being distinctive from others, esp[ecially] as regards morality and behavior; the disposition, reputation or collective personality traits of someone as they might be gathered from close observation of that person's pattern of behavior." *Character*, Black's Law Dictionary (12th ed. 2024). In some instances, adverse character determinations can affect credibility so long as the character in question bears on truthfulness or untruthfulness. *See* SDCL 19-19-608.

[¶20.] The characteristics identified in the circuit court's reasoning are not considerations related to untruthfulness on the specific question of Robert's notice. The circuit court noted in general terms Robert's desire to control the proceedings, his aggressive behavior, and his disagreeable nature. While these observations may support an adverse assessment of Robert's character, they do not directly reflect on the truthfulness of Robert's sworn statements that he did not receive notice of the proposed distribution and had not authorized his attorney to accept the proposed distribution. Significantly, this record does not contain any evidence that contradicts Robert's sworn statement that Donahoe had not informed him of the hearing and that he had not authorized Donahoe to approve the proposed distribution.

[¶21.] After noting that it was not certain whether Robert's claimed lack of communication with his attorney was accurate, the circuit court stated its other ground for denying the requested relief: "However, I will conclude that there is no injustice being imposed on Robert regarding the final Order. This Order is fair and equitable to all sides including Robert and his siblings."

[¶22.] Robert's Rule 60(b) motion was premised on the notion that he had been denied the opportunity to contest the proposed distribution. The specific remedy he sought was an evidentiary hearing related to the valuation of the estate assets included in the proposed distribution. He outlined the nature of his claim to explain why he was entitled to Rule 60(b) relief. He contended that the co-personal representatives had overvalued the assets in the proposed distribution, resulting in him receiving less than he may be entitled to at the time the probate ended.

[¶23.]      SDCL 29A-3-906 explains how and when values should be attributed to distributable assets.  That statute directs that when making an in-kind distribution, "the personal representative may ascertain the value of the assets as of the time of the proposed distribution in any reasonable manner[.]"[4]  *Id.*  After the personal representatives make a valuation of assets, orders "may be issued by the court at any time during the pendency of a supervised administration[.]"  SDCL 29A-3-505.  When the valuation of a proposed distribution is contested, the court must determine whether the valuation was ascertained in a reasonable manner.

_____

4.      SDCL 29A-3-906 in relevant part provides:

> (a) Unless a contrary intention is indicated by the will, the distributable assets of a decedent's estate shall be distributed in kind to the extent possible through application of the following provisions:
> (…)
>> (4) For the purposes of facilitating distribution, the personal representative may ascertain the value of the assets as of the time of the proposed distribution in any reasonable manner, including the employment of qualified appraisers, even if the assets may have been previously appraised.
>
> (b) After the probable charges against the estate are known, the personal representative may mail or deliver a proposal for distribution to all persons who have a right to object to the proposed distribution.  The right of any distributee to object to the proposed distribution on the basis of the kind or value of asset to be received, if not waived earlier in writing, terminates if the distributee fails to object in writing within fourteen days after the mailing or delivery of the proposal but only if the proposal informed the distributee of the right to object and of the applicable time limit.

[¶24.]     The circuit court approved the proposed distribution in the first instance because there was no objection from Robert, not because the court was able to determine the valuation was ascertained in a reasonable manner. Somewhat ironically, the circuit court denied Robert his Rule 60(b) relief without an evidentiary hearing, in part, by deciding that the proposed distribution was fair and equitable. It did so based on its recollection of the value of estate assets discussed during a jury trial a year earlier. It did this even though counsel for the estate and trust admitted the value of estate assets was not discussed during the jury trial "to the level that they would have been at a final distribution hearing in totality."

[¶25.]     Based upon Robert's unrefuted affidavit and the pending disciplinary proceedings at the time involving Donahoe, in which the Board expressed "serious concerns" about his ability to practice law, we conclude that extraordinary circumstances existed as required by Rule 60(b)(6) to set aside the order of distribution. Because the circuit court determined the distribution was fair and equitable, it concluded that no injustice would occur by denying the motion to vacate. The circuit court's assessment of the distribution was not based on a current valuation of the estate assets and was made without affording Robert an opportunity for a hearing on the proposed distribution. Under these circumstances, the circuit court abused its discretion in denying the motion to vacate the order for distribution pursuant to Rule 60(b)(6).

[¶26.]     We reverse and remand with direction to enter an order granting relief from the order of distribution and to set an evidentiary hearing on the petition for distribution.

[¶27.]	JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY,

Justices, concur.