#30966-aff in pt & rem-JMK
**2025 S.D. 65**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JACQUELINE M. TRUMBLE,            Plaintiff and Appellant,

    v.

ERIC TRUMBLE,            Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge

* * * *

ALEX S. HALBACH
ROBERT D. TRZYNKA of
Halbach Szwarc Law Firm
Sioux Falls, South Dakota            Attorneys for plaintiff and
           appellant.


A. RUSSELL JANKLOW
ERIN SCHOENBECK BYRE of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota            Attorneys for defendant and
           appellee.

* * * *

CONSIDERED ON BRIEFS
AUGUST 26, 2025
OPINION FILED **11/12/25**

#30966

KERN, Justice

[¶1.]      The Plaintiff, Jacqueline M. Trumble (Wife), filed for divorce against Defendant, Eric Trumble (Husband).  The couple owned a large residential property in Canada (Canadian Property) which burned to the ground during the pendency of their divorce proceedings.  During discovery, Wife disclosed an insurance policy with a $2 million Canadian Dollar (CAD)[1] coverage limit for the property and represented that it was the sole policy covering the premises.  The parties subsequently entered a stipulation and agreement entitling Wife to the Canadian Property and the related insurance policy proceeds upon divorce.  After the agreement was signed, the circuit court entered a divorce decree based on irreconcilable differences and incorporated the agreement.

[¶2.]      Nearly seven months later, Husband became aware that Wife was receiving $4 million CAD in insurance proceeds, not the $2 million CAD originally disclosed.  Husband filed a motion for relief from the order on the grounds of fraud under SDCL 15-6-60(b)(3) based upon Wife's alleged fraudulent concealment of an additional insurance policy.  After a hearing, the circuit court granted Husband relief from the judgment and found Wife committed fraud by failing to disclose assets.  Pursuant to the terms of the parties' stipulation and agreement and the court's statutory authority under SDCL 25-4-77, the court ordered that the undisclosed proceeds be split evenly between the parties.  Wife appealed and moved for a stay and supersedeas undertaking allowing the insurance proceeds to be expended to rebuild the home.  Husband objected.  The court stayed the original

_____

1.      The Canadian Dollar is the official currency of Canada.

order and allowed Wife, under certain terms and conditions, to use the undisclosed insurance proceeds to rebuild the Canadian Property. Wife's appeal from the original order challenges the circuit court's determination that she committed fraud under SDCL 15-6-60(b)(3) and the court's order requiring an equal division of the undisclosed insurance proceeds. We affirm in part, and remand for further proceedings.

## Factual and Procedural Background

[¶3.] After a 28-year marriage, Wife initiated divorce proceedings against Husband on May 31, 2023. Two days later, on June 2, the parties' largest marital asset, a waterfront property on a remote island in Canada, burned to the ground. Wife was living in the Canadian Property at the time of the fire, and many of her personal belongings were lost in the fire. Husband was living in Sioux Falls at the parties' other residence at the time, where most of his personal belongings were kept.

[¶4.] On August 9, 2023, Husband filed his answer and counterclaim to the divorce proceedings. As discovery began, Wife disclosed through an email to Husband and his counsel on October 15, 2023, an insurance policy covering the Canadian Property issued by National Insurance Company. The term of policy coverage was from February 3, 2023, through February 3, 2024, covering the damages caused by the fire. The policy produced was a "replacement cost value" policy, meaning the insurance proceeds would cover the cost to repair or replace the damaged or destroyed property up to policy limits. The limits on the National Insurance policy appeared to be $2 million CAD, and the policy was solely in Wife's

name.  Because he was not a named insured, Husband had no authority to access information related to the policy and he relied solely on Wife's representations.

[¶5.]         Husband's counsel sought additional information through interrogatories and requests for production of documents regarding the insurance policy over the next four months.  Counsel emailed Wife's counsel multiple times, requesting that Wife produce the information and threatening to file a motion to compel if discovery was not forthcoming.  Wife's counsel maintained that Husband and his counsel had "ALL of the documents he has requested" relating to the insurance policy.  In a January 3, 2024 email, Wife's counsel reaffirmed the proposition that the insurance company would "rebuild the home at $2 million Canadian."

[¶6.]         Dissatisfied with this representation, on February 12, 2024, Husband filed a motion to compel discovery and a motion to place the insurance proceeds in a trust account or with the court.  The circuit court set a motion hearing date.  The hearing was never held, however, because the parties reached a settlement agreement prior to the hearing.  The circuit court, on March 25, 2024, entered a judgment and decree of divorce based on irreconcilable differences which incorporated the parties' stipulation and agreement equitably dividing the marital estate.

[¶7.]         The portions of the stipulation and agreement relevant to the issues herein are set forth below:

> 4. **Disclosure of Property.**  The Parties agree that they have disclosed the existence of all property, in whatever form, owned by either or both of them, and that this Agreement is based upon a full knowledge of all property.  Should an item

> of property be discovered in the future or should a party have failed to disclose the existence of an item of property, the Parties shall share equally in the value of that property, or the party who does not receive the undisclosed item shall receive an equivalent value in cash or other property.
>
> * * *
>
> 27. **Representation of the Parties.** Both Parties are aware of their discovery rights and the foregoing terms of this Agreement are based upon the representations of the Parties to each other that they have made a thorough and complete disclosure of their assets, liabilities and overall financial position, and each acknowledges that this Agreement is being executed in reliance on the validity of said information.

[¶8.] The agreement entitled Wife to the Canadian Property and any insurance proceeds related to the claim due to the fire, while Husband kept the Sioux Falls residence and all his personal belongings. During negotiations, the parties valued the Canadian Property at $2.8 million CAD—$800,000 CAD more than the insurance policy limits.

[¶9.] Two months after the parties signed the agreement, on May 22, 2024, Wife hired a Canadian company to conduct a geotechnical assessment on the property. An appraiser then used this assessment to generate a reconstruction cost analysis which estimated the cost to rebuild the Canadian Property at $3,305,105.79 CAD. Relying on this assessment, Wife contracted with R Simard Contracting, a residential builder whom Wife had worked with before, to reconstruct the home at a cost of $4,039,821.

[¶10.] Almost seven months after the divorce decree was entered, on October 14, 2024, Husband filed both a motion for relief from the order on the grounds of fraud pursuant to SDCL 15-6-60(b) (Rule 60(b)) and a motion for an order to show

cause "as to whether [Wife] misrepresented the value of the Canadian Property's insurance proceeds and violated the Parties['] Stipulation and Agreement." Husband alleged that Wife had presented an inactive and fraudulent insurance policy during their negotiations, and that the true and active policy had actual limits of at least $4 million CAD. Husband asserted he "became aware through different channels that [Wife] was not receiving that $2,000,000 in insurance proceeds but was actually receiving in excess of $4,000,000." One day later, on October 15, Wife forwarded to Husband an email from a Toronto Dominion (TD) Insurance employee addressing the resolution of an insurance policy claim. The claim discussed in the email, however, referenced a policy with limits of *$4 million CAD*, not $2 million CAD. On October 31, 2024, Wife substituted her counsel of record with her current counsel.

[¶11.]      The court held a hearing on Husband's motion for relief on December 2, 2024. The parties stipulated to dismiss the motion and affidavit seeking an order to show cause, but the court heard oral argument on the motion for relief under Rule 60(b). The court took no testimony on the Rule 60(b) motion and made no formal findings of fact. The court indicated that it would enforce the stipulation and agreement because it found evidence of fraud. The court also ordered the parties to produce any undisclosed insurance policies and share equally in any proceeds exceeding the earlier valuation of $2 million CAD.

[¶12.]      Following the hearing, Wife's counsel emailed the court to inquire about whether the court would be making findings of fact. The court replied there

"was no testimony so the Court does not require Findings of Fact or Conclusions of Law" under SDCL 15-6-52(a).

[¶13.] The circuit court, on December 23, 2024, signed an amended written order finding Wife "committed fraud, failed to disclose or omitted assets, and/or intentionally concealed assets by producing information and representing to both Defendant and his counsel an incorrect insurance limit for the [Canadian Property]." Based on this finding, the court ordered Wife to produce within 30 days every insurance policy in effect for the Canadian Property at the time of the fire. It further ordered that any insurance proceeds exceeding $2 million CAD be equally divided between the parties in accordance with SDCL 25-4-77 and the parties' stipulation and agreement, and that Wife place all excess proceeds in her counsel's trust account. Lastly, the court ordered Wife pay Husband's attorney fees and costs in bringing the motion, which totaled $3,169.01.

[¶14.] Wife filed a notice of appeal on January 13, 2025. Wife then filed a motion for a supersedeas undertaking, seeking an order staying the matter until the appeal was finalized and allowing the insurance proceeds, which were contractually obligated to R Simard for the reconstruction, be utilized for that purpose. Husband objected to a stay and asked that the court order Wife to post a monetary bond equivalent to half of the undisclosed insurance proceeds or deposit the same in her attorney's trust account. The circuit court concluded that because the order contemplated distribution of proceeds from an insurance claim, SDCL 15-

26A-31 applied.[2]  In considering an appropriate bond, the court granted the stay and ordered Wife to file a supersedeas undertaking which required that she use any insurance proceeds to rebuild the house, refrain from committing waste, and deposit any excess proceeds after the home was rebuilt into her counsel's trust account.[3] Wife appeals, raising several issues, which we revise and restate as follows:

> 1. Whether the circuit court clearly erred in finding Wife committed fraud under Rule 60(b).
>
> 2. Whether the circuit court abused its discretion in granting Rule 60(b) relief.

**Standard of Review**

[¶15.] Our well-established rule provides that "[t]he circuit court's decision to grant or deny relief under Rule 60(b) will not be disturbed on appeal unless the circuit court abused its discretion." *Estate of Mack*, 2025 S.D. 7, ¶ 13, 17 N.W.3d 874, 879 (quoting *Hiller v. Hiller*, 2015 S.D. 58, ¶ 21, 866 N.W.2d 536, 543).  When reviewing a Rule 60(b) motion, "[t]he trial court's discretion is to be exercised liberally in accord with legal and equitable principles in order to promote the ends of justice." *Williams Servs. v. Sherman*, 492 N.W.2d 122, 125 (S.D. 1992) (citation omitted).  "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is

---

2. SDCL 15-26A-31 provides: "If the appeal is from any judgment or order not expressly covered by this chapter the bond required by § 15-26A-25 shall be conditioned in such amount and form as the circuit court directs."

3. After the circuit court granted Wife's motion for a supersedeas bond and a stay pending appeal, Husband filed a motion with this Court pursuant to SDCL 15-26A-39, seeking the approval of a monetary bond or cash security equal to the amount of the undisclosed insurance proceeds.  We denied the motion.

arbitrary or unreasonable." *Estate of Mack*, 2025 S.D. 7, ¶ 13, 17 N.W.3d at 879 (citation modified) (quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850).

[¶16.]     As an initial matter, the parties disagree over whether the clearly erroneous or de novo standard of review applies to our review of the circuit court's factual findings.  Husband argues we should review the circuit court's findings for clear error.  Wife contends we should review the findings de novo because the circuit court made its decision based solely on documentary evidence.

[¶17.]     SDCL 15-6-52(a) provides: "[f]indings of fact, *whether based on oral or documentary evidence,* may not be set aside unless clearly erroneous[.]"  (Emphasis added.)  In 2000, the Legislature added the phrase "whether based on oral or documentary evidence" to the rule in response to the Court's well-settled practice of reviewing de novo findings based on documentary evidence.  2000 S.D. Sess. Laws ch. 91, § 1; *see Peterson v. Evangelical Lutheran Good Samaritan Soc'y*, 2012 S.D. 52, ¶ 16, 816 N.W.2d 843, 848.  After the 2000 amendment, we have regularly reviewed findings based on documentary evidence for clear error.  *See Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 17, 790 N.W.2d 52, 59–60; *Gluscic v. Avera St. Luke's*, 2002 S.D. 93, ¶ 15, 649 N.W.2d 916, 919; *Faulk v. Faulk*, 2002 S.D. 51, ¶ 9, 644 N.W.2d 632, 634.

[¶18.]     Accordingly, while we acknowledge the differing views of the parties, we adhere to the standard articulated in SDCL 15-6-52(a) as amended, which requires us to review the circuit court's factual findings for clear error.  Under the clearly erroneous standard:

> The question is not whether this Court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. This Court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence. Doubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the successful party's "version of the evidence and all inferences fairly deducible therefrom which are favorable to the court's action."

*Estate of Mack*, 2025 S.D. 7, ¶ 14, 17 N.W.3d at 879 (quoting *Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222).

## Analysis

### 1. Whether the circuit court clearly erred in finding Wife committed fraud under Rule 60(b).

[¶19.] SDCL 15-6-60(b) provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]" "The purpose of Rule 60(b) is 'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.'" *Corcoran v. McCarthy*, 2010 S.D. 7, ¶ 14, 778 N.W.2d 141, 147 (quoting *Elliott v. Cartwright*, 1998 S.D. 53, ¶ 7, 580 N.W.2d 603, 604). "The motion shall be made within a reasonable time," and for reasons of fraud, "not more than one year after the judgment, order or proceeding was entered or taken." SDCL 15-6-60(b). "The burden of establishing fraud rests on the party who seeks to rely on it for affirmative relief or as a defense to an action." *Jennings v. Jennings*, 309 N.W.2d 809, 812 (S.D. 1981).

[¶20.]          Three types of conduct may result in relief under Rule 60(b)(3): misconduct, fraud, or misrepresentation. We recognize two types of fraud in the Rule 60(b)(3) context: fraud upon the court and fraud between the parties. Fraud upon the court is the "species of fraud which does, or attempts to, defile the court itself." *Corcoran*, 2010 S.D. 7, ¶ 16, 778 N.W.2d at 147–48 (quoting *Gifford v. Bowling*, 86 S.D. 615, 624, 625, 200 N.W.2d 379, 384 (1972)). Examples include "bribery of judges, employment of counsel to 'influence' the court, bribery of the jury, and the involvement of an attorney (an officer of the court) in the perpetration of fraud." *Gifford*, 200 N.W.2d at 384 (citation omitted).

[¶21.]          Because we have not previously been called upon to define fraud occurring between the parties in the Rule 60(b) context, we look to the federal courts for guidance. *See Nooney v. StubHub, Inc.*, 2015 S.D. 102, ¶ 8 n.1, 873 N.W.2d 497, 499 n.1. The Eighth Circuit and the South Dakota District Court both follow the majority rule that "the movant must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case." *Boddicker v. Esurance Inc.*, 770 F. Supp. 2d 1016, 1019 (citation modified) (quoting *U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006)). Moreover, the moving party must establish scienter by demonstrating "that the misrepresentation was knowing and intentional." *Smith v. Clarke*, 458 F.3d 720, 724–25 (8th Cir. 2006); *U.S. v. Lee*, No. 4:97-cr-00243-02, 2020 WL 3618709 at *9 (E.D. Ark. July 2, 2020) (requiring the moving party "to demonstrate that any misrepresentation was

intentional and that any fraud was deliberate") (citing *Dukes v. City of Minneapolis*, 339 Fed. Appx. 665, 668 (8th Cir. 2009) (per curiam)).

[¶22.]     Here, the circuit court found that "[Wife] intentionally concealed or omitted assets pursuant to SDCL 25-4-77 and committed fraud pursuant to SDCL 15-6-60(b)." Wife's concealment of the $4 million CAD policy prevented a full and fair division of marital assets and hindered Husband's ability to present a defense to Wife's claims. The Canadian Property was the couple's largest marital asset, and an undisclosed policy that effectively doubled the value of the property certainly would have affected the division of marital assets between the parties. Based on our review of the record, we conclude that this finding is adequately supported by the affidavits and attached exhibits contained within the record and is not clearly erroneous.

[¶23.]     During divorce proceedings, Wife produced the $2 million CAD policy in response to Husband's request for any relevant insurance policies. At the time, she represented that this was the sole insurance policy on the Canadian Property, and that Husband had "everything" he needed to evaluate the claim. Throughout the discovery process, Wife and Wife's counsel repeatedly refused to provide any additional information related to insurance policies on the Canadian Property. Instead, Wife and Wife's counsel affirmatively represented on several occasions that the $2 million CAD policy was the applicable policy. Wife's counsel specifically stated: "[Wife] has provided directly to [Husband], ALL of the documents he has requested. He has everything! The insurance company will rebuild the home at $2 million Canadian."

[¶24.] Husband relied on these direct representations by Wife and her counsel, and the parties subsequently negotiated the stipulation and agreement based upon the $2 million CAD insurance policy provided by Wife, which had policy limits lower than the $4 million CAD policy later discovered. Based on these representations alone, Husband presented sufficient evidence for the circuit court to find that Wife concealed or failed to disclose assets.

[¶25.] In her affidavit, Wife does not directly address Husband's claim that she failed to disclose a second policy on the property, or that she fraudulently concealed a policy with limits $2 million CAD higher than the policy produced on October 15, 2023. Wife instead avoids the accusation and asserts that Husband was aware that the value of the insurance claim was still unsettled, and therefore failed to exercise due diligence before signing the agreement. Wife relies on *Jeffries v. Jeffries* to assert that the stipulation was an arms-length transaction in which Husband failed to proceed with due diligence by signing the stipulation before he had all of the necessary information. 434 N.W.2d 585, 588 (S.D. 1989). In *Jeffries*, we held that "no unique confidential relationship existed" between husband and wife, and that "each spouse must assume equal responsibility for ascertaining such nature and value" of marital assets. *Id.* But Wife overlooks the very next phrase in which we make clear that "we do not intend to grant to estranged spouses any license to hide or misrepresent the value of any marital assets, nor will any such practice be condoned." *Id.*

[¶26.] We reiterated the *Jeffries* holding in *Pekelder v. Pekelder*:

> [*Jeffries*] does not grant a license to hide or misrepresent the
> value of marital assets. Rather, it holds that divorcing spouses

> living apart and negotiating a property settlement bear equal responsibility for ascertaining the nature and value of their marital assets.

1999 S.D. 45, ¶ 10, 591 N.W.2d 810, 813 (citation modified).  We held in *Pekelder* that the wife "fulfilled her responsibility to ascertain the nature and value of the marital assets by retaining counsel and negotiating through him and by relying on his request for production of documents" and other exchanges of information about assets.  *Id.* ¶ 11.

[¶27.]  Likewise, Husband herein fulfilled his responsibilities by relying on Wife's representations and the evidence provided to him during discovery.  Husband hired counsel and repeatedly requested production of the policy through interrogatories and requests for production.  Wife and her counsel made several representations that the policy was the active policy and had been fully disclosed.  Once Husband and his counsel began discovery procedures to ascertain the value of all marital assets, Wife had a continuing obligation to make full disclosure of those assets.  *See id.* ¶ 12, 591 N.W.2d at 813.  The evidence is undisputed that she failed to do so.

[¶28.]  We note that at the hearing, the parties relied solely on affidavit evidence.  As a general rule, affidavits are an unsatisfactory form of evidence in that "they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, omit important facts or give a distorted picture of them." *Estate of Eberle*, 505 N.W.2d 767, 771 (S.D. 1993) (citing *Bloom v. Bloom*, 498 N.W.2d 213 (S.D. 1992)).  Proof by affidavit can also impair the ability of this Court to meaningfully review the record on appeal.  *Dixon v. Dixon*,

423 N.W.2d 507, 510 (S.D. 1988). "Nevertheless, we have left the ultimate determination of whether issues of fact should be resolved by affidavit in the sound discretion of the trial courts[.]" *Bloom*, 498 N.W.2d at 215.

[¶29.]     SDCL 15-6-43(e) provides: "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions." "[T]here are many cases where no oral testimony need be received and the trial court, in the exercise of sound discretion, may permit the trial of an issue of fact, involved in the motion, on non-oral testimony. However, the trial court in exercising this discretion must be cautious to prevent a circumvention of justice." *Dixon*, 423 N.W.2d at 510 (internal citation omitted).

[¶30.]     The court reviewed affidavits by Husband and Wife, along with discovery material related to Wife's alleged fraudulent conduct which, critically, she did not deny. The court, in the exercise of its discretion, was free to require oral testimony or depositions, but did not do so. Instead, the court ruled on the Rule 60(b) motion based on the contents of the record before it.

[¶31.]     While affidavits may not have been the best available form of proof in this case, neither party offered live testimony nor objected to the court's reliance on the affidavits. From our review, the record supports the circuit court's finding by clear and convincing evidence that Wife intentionally concealed or withheld an additional insurance policy covering the couple's largest marital asset during negotiations, thereby depriving Husband of the ability to fully and fairly assess the

value of the marital assets before signing the settlement agreement. The court did not clearly err in entering such finding.

**2. *Whether the circuit court abused its discretion in granting Rule 60(b) relief.***

[¶32.] "The circuit court's decision to grant or deny relief under Rule 60(b) will not be disturbed on appeal unless the circuit court abused its discretion." *Estate of Mack*, 2025 S.D. 7, ¶ 13, 17 N.W.3d at 879 (quoting *Hiller*, 2015 S.D. 58, ¶ 21, 866 N.W.2d at 543). Wife argues that, after granting Rule 60(b) relief, the circuit court erred by treating the insurance proceeds as separate from the Canadian property. She urges this Court to adopt a rule that treats property casualty insurance proceeds to replace damaged marital property as indivisible from the property itself.

[¶33.] However, the circuit court's order for a supersedeas undertaking, entered after Wife appealed, stayed the distribution of any insurance proceeds and instead ordered that because the proceeds were contractually obligated for the rebuilding of the home, they could be expended. The court also ordered Wife to refrain from committing waste, and to deposit any excess proceeds after the home was rebuilt into her counsel's trust account. Given the terms of this latter order, it is unclear what, if any, insurance proceeds exist to be equitably divided between the parties. As such, it is doubtful that a justiciable controversy remains as to the original order directing the parties to divide the proceeds greater than $2 million CAD, as that order appears to be moot. "A moot case is one in which there is no real controversy or which seeks to determine an abstract question which does not rest on existing facts or rights, with the result that any judicial determination would have

-15-

no practical or remedial effect." *Netter v. Netter*, 2019 S.D. 60, ¶ 9, 935 N.W.2d 789, 791 (citations omitted). We therefore remand the case to the circuit court for further proceedings to effectuate the Rule 60(b) relief under the current circumstances and determine the appropriate division of the parties' assets.

***Appellate Attorney Fees***

[¶34.] Both Husband and Wife moved this Court for their appellate attorney fees. We award such fees and costs to Husband in the amount of $6,253.66, plus printing costs in the amount of $37.17.

[¶35.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.