PEYTON, Commissioner of Banks of Minnesota, Appellant, v
NIELSEN, Respondent.

SMITH, Superintendent of Banks, et al, Respondents, v.
BROWNS VALLEY STATE BANK,
et al, Appellants.

(244 N. W. 384.)

(File No. 7279. Opinion filed October 4, 1932.)

*Robert D. Jones,* of Milbank, and *F. L. & E. V. Cliff,* of Ortonville, Minn., for Appellants.

*Turner & McKenna,* of Sisseton, for Respondents.

RUDOLPH, J. Two actions have been consolidated, tried, and submitted as one. In the first action the commissioner of banks of the state of Minnesota, in charge of the Browns Valley State Bank, Browns Valley, Minn., sought by claim and delivery to gain possession of certain personal property of the defendant Nielsen for the purpose of foreclosing a chattel mortgage held by the Browns Valley Bank. In the second action the superintendent of banks of the state of South Dakota, in charge of the State Bank of Sisseton, sought to restrain the foreclosure of the chattel mortgage held by the Browns Valley State Bank upon the property of Nielsen, and claimed a lien upon the property superior to that of the Browns Valley State Bank. The facts are substantially as follows: Nielsen owed the Browns Valley Bank the sum of $1,467.80, which was secured by a chattel mortgage upon all of Nielsen's property including machinery, live stock, and his undivided interest of the crop upon the farm, which he was renting and occupying. This farm occupied by Nielsen was owned by the Guaranty State Bank of Sisseton, and was operated by Nielsen under the terms of a written lease entered into between him and the bank. This lease was for the farming season of 1930, and among other provisions, it contained the following:

"After May 15, 1930, first party is to pay $3.00 per acre for 20 acres sheep pasture on the SE¼, Section 9—125—50, providing sheep are retained after this date.

"First party is to pay for use of hay and pasture land and 22 acres alfalfa land at $3.00 per acre."

"First party * * * not to sell or remove or suffer to be sold or removed any of the produce of said farm or premises, or the stock, increase, income or the products herein mentioned of any kind character, or description, until the final settlement, without the written consent of the party of the second part; and until such settlement, the title and possession of all hay, grain, crops, produce, stock, increase, income and products raised, grown or produced on said premises shall be and remain in the party of the second part, and said party of the second part has the right to take and hold enough of the crop, stock, increase, income and products that would on the division of the same belong to said party of the first part, to repay any and all advances made to him by party of the second part, interest at 7 per cent per annum, and also to pay all indebtedness due said party of the second part by said party of the first part, if any there be."

"In consideration of the faithful and diligent performance of all the stipulations of this contract by the party of the first part, the party of the second part agrees, upon reasonable request therefor made, to give and deliver on said farm to the party of the first part the one-half of all small grains, vegetables, two-thirds of the corn and all hay, as soon after the contract is fulfilled and complete settlement made on cash rent or advances or back rental, so raised and secured upon said farm during the said season."

In addition to the $126 due under the 1930 lease as cash rent ($60 for sheep pasture and $66 for alfalfa), Nielsen owed the Sisseton bank $621 for back rent, which had accumulated during the years prior to 1930, making in all a total of $747 that Nielsen owed the Sisseton bank at the time the actions were commenced. The trial court found (and there was evidence to sustain the finding) that at the time the sheriff of Roberts county took possession of the personal property of Nielsen in the claim and delivery action, he employed the said Nielsen to care for all of the personal property so taken at the rate of $10 per day, and that Nielsen did care for the property from the 13th day of October, 1930, until the 27th of January, 1931, when the judgment in this action was entered. The defendant Nielsen, by his amended answer in the claim and delivery action, set up the agreement to care for the property, and claimed a lien upon the live stock left with him by the

sheriff, for the care and food furnished by him while thus left in his possession. At the time the action was started by the Sisseton bank against the Browns Valley Bank, seeking to enjoin the Browns Valley Bank from proceeding with its foreclosure of the mortgage, a temporary restraining order was issued, restraining the Browns Valley Bank from proceeding further with the foreclosure of the chattel mortgage until the further order of the court. A part of the live stock, covered by the mortgage and involved in this proceeding, consisted of several head of sheep, which were pastured on the farm by Nielsen after the 15th of May, 1930. The trial court concluded as follows:

"First, That the Guaranty State Bank of Sisseton, South Dakota, have and receive all of the grains free from any claim or lien of the other litigants herein described in the foregoing findings, being 843 bushels of wheat and oats succotash and 74 bushels of rye; and that the Guaranty State Bank of Sisseton, South Dakota, has a lien in the sum of $60.00 upon the sheep described in the foregoing findings, for pasture for the season of 1930. That the lien of the Guaranty State Bank is superior to the lien of Albert Nielsen and the Browns Valley State Bank upon said sheep.

"Second, That Albert Nielsen has a lien upon all of the live stock described in the foregoing findings in the sum of $580.00 including the sheep, horses and cattle. That the lien of the said Albert Nielsen upon the sheep is inferior to that of the Browns Valley State Bank, and is superior to that of the Browns Valley State Bank on all of the live stock.

"Third, That the Browns Valley State Bank by reason of its mortgage has a lien upon the personal property described in the findings, with the exception of the grains and crops grown on said lands, which lien is in the amount of $1467.80. That said lien is inferior to the lien of Albert Nielsen on all of the live stock.

"Fourth, That the Guaranty State Bank is entitled to an order and judgment of this Court restraining the Browns Valley State Bank from in anywise interfering with its liens and for the possession of the grains hereinbefore described, and for the sale of the said sheep for the purpose of discharging its lien thereon.

"Fifth, That Albert Nielsen is entitled to a judgment declaring his lien upon the live stock described in the findings herein su-

perior to any claim of the Browns Valley State Bank; and that the Browns Valley State Bank is entitled to judgment declaring it to have a lien in the sum of $1467.80 upon said personal property described in the findings herein, inferior to that of the other claimants.

"That the Guaranty State Bank is entitled to recover its costs against the Browns Valley State Bank herein; and that Albert Nielsen is entitled to his costs against the Browns Valley State Bank. That the Browns Valley State Bank recover no costs. That after the payment of the liens of the Guaranty State Bank and Albert Nielsen, then the costs next be satisfied before the payment of any money to the Browns Valley State Bank. That judgment be entered directing the sheriff of Roberts County, South Dakota, to sell all of said property as provided for sales at chattel mortgage foreclosure."

Discussing, first, the conclusion of the trial court regarding the crop raised on the premises for the season of 1930: The record clearly establishes, and the court so found, that at the time of the commencement of the actions, there was due from Nielsen to the Sisseton bank, the sum of $747; $126 of this was for 1930 rent, and the balance was for rent accruing from prior years. However, the contract specifically provides that title and possession of hay, grain,. crops, etc., raised on the premises shall be and remain in the party of the second part (the Sisseton bank) until all indebtedness due the party of the second part is paid, and the contract specifically covers back rental that is due. A contract, almost identical with the contract herein involved, was before this court in the case of Robinson v. Colton Grain Co., 50 S. D. 434, 210 N. W. 675, 676, wherein this court said: "Contracts containing clauses similar to, if not identical with, the one above quoted have frequently been considered by this court, and have been uniformly held to be valid and to relate solely to ownership of the crops and not to the creation of liens thereon. No filing of such a contract is necessary under existing statutes. This rule has become too firmly established to be overthrown without legislative enactment." The grain in dispute had not been divided at the time these actions were brought, nor had there been any settlement or any payment of the amounts due the Sisseton bank. Under the rule announced in the case of Robinson v. Colton Grain Company, supra, and

the many cases therein cited, we are of the opinion that the trial court ruled correctly, in so far as the grain is concerned.

We next consider the conclusion of the trial court to the effect that the Guaranty State Bank of Sisseton has a lien in the sum of $60 upon the sheep, prior to the lien of the Browns Valley Bank under its mortgage. In so holding the trial court was in error. The lease simply provides that if sheep are kept on the S. E. ¼ of section 9 after May 15, 1930, the tenant is to pay $3 per acre for 20 acres of sheep pasture. Under that provision of the lease, should any cash rent become due because sheep had been kept after May 15, 1930, it would be the same as any other cash rent due under the terms and provisions of the lease. There is nothing in the facts which would create a lien under the provisions of sections 1669 and 1670 relating to agister's liens. These sheep were the property of the tenant, and he was pasturing them on this farm, which he had leased from the Sisseton bank. True, the Browns Valley Bank had a mortgage on these sheep, but this fact does not in any way create a lien in favor of the Sisseton bank, under the provisions of our Code relating to agister's liens.

We consider next the conclusion of the trial court that the defendant Nielsen has a lien upon all of the live stock for its care while left in his possession by the sheriff, which lien is superior to that of the mortgage of the Browns Valley Bank. The respondents also seek to justify this claimed lien of Nielsen as an agister's lien under the provisions of our statute. There is no contention that respondent complied with the provisions of section 1669, R. C. 1919, as that section has been amended by chapter 216 Laws of 1923, which specifically provides that an agister's lien should not be superior to a prior recorded mortgage, unless the agister serve notice in writing on the mortgagee, either personally or by mail, stating that he is feeding and caring for the live stock in question. In construing the provisions of our law relating to agister's liens, this court, in Wells v. Booth, 46 S. D. 280, 192 N. W. 489, 490, said: "We think it elementary that no mortgagor can have a lien upon property mortgaged superior to that of the mortgage which he himself has given. * * * It seems to be almost universally established that an agister's lien can never become superior to that of a chattel mortgage, duly filed and recorded." The extent and character of the lien of an agister

in this state is determined by our statute. Section 1670 provides that there shall be no such lien "when said property was not owned by the person instrusting the same at the time of delivering them into the possession," etc. In the instant case, the Browns Valley Bank was not the owner of this property; the owner was Nielsen, who is now seeking to assert a lien against his own property. Giving the statutes (sections 1669 and 1670) their broadest and most liberal construction, we cannot find anything therein which gives the owner of property a lien thereon as against the mortgagee. Certainly these statutes do not contemplate that a person have a lien upon property which he owns; the essence of the statutes is that ownership is in some one else than he who asserts the lien. We are of the opinion therefore, that the trial court erred in concluding that Nielsen had a lien upon the live stock superior to the lien of the Browns Valley Bank.

However, under the pleadings and the record as made in these cases, we are of the opinion that Nielsen should have judgment against the Browns Valley Bank for the amount the trial court found was due him from that bank for the care and keep of the live stock.

The trial court found that "no demand for possession of the personal property was ever made by the Browns Valley State Bank to Albert Nielsen, prior to the commencement of this action; and that the said Nielsen never refused to surrender the possession of the said property to the said Browns Valley State Bank." This finding is supported by the record as made, and the fact therein determined was an issue under the pleadings. There is nothing in the pleadings or in the evidence to indicate that a demand for possession of the property by the Browns Valley Bank prior to the commencement of the claim and delivery action would have been useless or unavailing; the trial court, therefore, did not err in awarding costs to Nielsen in the claim and delivery action.

The trial court is directed to modify its judgment in conformity with the views herein expressed, and, as thus modified, the judgment and the order denying the motion for new trial are affirmed. No costs are to be taxed against either party in this court.

CAMPBELL, P. J., and POLLEY, ROBERTS, and WARREN, JJ., concur.