#26697, #26704-rev & rem-JKK

**2013 S.D. 92**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DAVID COLBURN and
CHRISTINE COLBURN,                          Plaintiffs and Appellants,


    v.


ROBERT HARTSHORN,                           Defendant and Appellee,


    and


FIRST INTERSTATE BANK                       Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MANDEL
Judge

* * * *

PATRICK M. GINSBACH of
Farrell, Farrell and Ginsbach, PC
Hot Springs, South Dakota                   Attorneys for plaintiffs
    and appellants.


COURTNEY R. CLAYBORNE of
Clayborne, Loos & Sabers, LLP
Rapid City, South Dakota                    Attorneys for defendant
    and appellee.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 4, 2013

OPINION FILED **12/11/13**

KONENKAMP, Justice

[¶1.]      This is an action to recover on a cattle caretaking agreement and to foreclose an agister's lien. The circuit court awarded compensation on the agreement, but ruled the agister's lien invalid because the cattle were cared for on the cattle owner's land, not the caretakers' land. Yet nothing in our laws governing such liens defeats their validity when cattle are entrusted to a caretaker on the cattle owner's land. Accordingly, we reverse and remand.

## Background

[¶2.]      In January 1998, to run a cow-calf operation, Christine and David Colburn began leasing real property from Christine's father, Robert Hartshorn, in Custer County, South Dakota. According to the Colburns, Hartshorn agreed to lease the property to them for $20,000 a year, with the term beginning January 1 and ending December 31. Each year, the Colburns were to make a $10,000 payment on or before April 1 and a second payment of $10,000 on or before November 1. In addition to leasing Hartshorn's real property, the Colburns agreed to care for Hartshorn's cattle, which included providing feed, cake, minerals, pasturing, watering, herding, calving, weaning, and arranging for calf sales. In exchange, Hartshorn would give the Colburns one half the net calf sale proceeds when the cattle were sold in the fall of each year. Neither the terms of the cattle care agreement nor the lease agreement were reduced to writing.

[¶3.]      This arrangement continued from 1999 until 2007, when drought conditions forced Hartshorn to move his cattle from the Colburns' care to a ranch in Wyoming. In January 2010, Hartshorn resumed the same arrangement with the

Colburns, placing some 50 head of cattle on the land the Colburns leased. Following the October 2011 sale and Hartshorn's receipt of the Colburns' $10,000 lease payment, Hartshorn placed in the Colburns' care 58 cows and 3 bulls. On April 1, 2012, the Colburns paid the first half of their annual lease payment.

[¶4.]       In September, a dispute David Colburn and Hartshorn had over some hay intensified when Hartshorn allegedly drew a gun on David. In response, David obtained a temporary protection order against Hartshorn. Hartshorn did not challenge it, saying he wanted nothing to do with David. According to Hartshorn, after their relationship deteriorated, he no longer wanted the Colburns to lease his land or care for his cattle. In response to a letter from the Colburns' attorney seeking a stipulation that would allow the Colburns to sell Hartshorn's cattle and divide the net calf sale proceeds, Hartshorn replied that any attempt by the Colburns to sell the cattle would be deemed theft. Hartshorn then attempted, unsuccessfully, to obtain another rancher to care for his cattle.

[¶5.]       In October 2012, the Colburns served on Hartshorn and First Interstate Bank an agister's lien for caring for Hartshorn's 58 cows and 3 bulls. *See* SDCL ch. 40-27. They also gave notice of their intent to retain possession of the cattle until payment. That same month, the Colburns brought an action to recover amounts due for their care of Hartshorn's cattle in 2012 and to foreclose on the lien at a rate of $1.34 per day per head after October 15, 2012, for their continued care of the cattle after what would have been the ordinary sale date.[1] Ultimately, the

---

1.    Hartshorn brought a separate civil action for forcible entry and detainer and served a notice to quit on the Colburns in November 2012. CIV 12-111.

Colburns sought and received a court order to sell the calves in February 2013, at the St. Onge Livestock Exchange. The sale yielded a net return of $42,384.75, which the Custer County Clerk of Courts held in trust.[2]

[¶6.]     In a bench trial, David testified about the terms of the land lease and cattle care agreement. He explained that because they began leasing Hartshorn's land in January 1998, he believed the lease ran from January 1 to December 31. He said that Hartshorn agreed to pay them one half the net calf sale proceeds each October for the care the Colburns provided the cattle during the year. Because Hartshorn did not sell the cattle in October 2012 and did not pay the Colburns for the care provided before October 2012, David claimed Hartshorn owed them one half the net calf sale proceeds from the February 2013 sale. The Colburns also sought to recover $1.34 per head per day after October 15, 2012, for the care they provided for Hartshorn's cattle until they were sold in February 2013. As support, the Colburns offered expert testimony from Perle O'Daniel. O'Daniel testified that the Colburns' lien for $1.34 per head per day was fair and reasonable.

[¶7.]     Hartshorn testified that the terms of the land lease and cattle care agreement with the Colburns were intended to be consistent with his previous written lease and cattle care agreement with Travis Bies. Under that agreement, Bies leased Hartshorn's property from April to March, made two lease payments (April and November), cared for Hartshorn's cattle, received one half the net calf sale proceeds, provided 20 tons of hay to Hartshorn in non-drought years, and

---

2.     From this amount, the court ordered that First Interstate Bank be paid $10,000 to satisfy its security interest.

allowed Hartshorn's granddaughter to run cattle on the property. According to Hartshorn, beginning in 1998, the Colburns agreed to abide by the terms of the Bies Lease, and in fact, provided the 20 tons of hay to Hartshorn in non-drought years, allowed Hartshorn's granddaughter to run cattle on the land, paid rent in April and November, and took care of Hartshorn's cattle. By the terms of the Bies Lease, the Colburns, in Hartshorn's view, were entitled to no money for their care of Hartshorn's cattle from October 2012 to February 2013, because the Colburns had yet to fulfill the terms of their April 1, 2012 to March 31, 2013 cattle care agreement.

[¶8.] In its amended findings of fact and conclusions of law, the circuit court found that "[t]he totality of the parties' conduct reasonably indicate[d] assent that the parties intended to be bound by the terms of an implied contract." The court ruled that the Colburns were entitled to one half the net calf sale proceeds from the February 2013 sale based on the parties' past practices. Also, the court ordered the Colburns to pay Hartshorn $10,000 representing the lease payment for November 1, 2012 through April 1, 2013. But the court found the agister's lien "invalid, as under the terms of the implied contract, Hartshorn retained an interest in the use of the leased premises." Ultimately, the court ruled that the Colburns were entitled to $11,192.37, constituting one half of $42,384.75 ($21,192.37) minus $10,000 rent owed to Hartshorn.

[¶9.] In this appeal, the Colburns challenge the court's decision on their agister's lien and order denying prejudgment interest. By notice of review, Hartshorn asserts that the court erred in finding a valid and enforceable contract.

**Analysis and Decision**

[¶10.] The Colburns assert error in the court's ruling that their agister's lien was invalid after specifically finding that the parties had an implied contract whereby Hartshorn entrusted his cattle to the Colburns for the purpose of feeding, herding, pasturing, etc., in exchange for one half the net calf sale proceeds. In addition to the court's implied contract award, the Colburns contend that they are entitled to recover for their continued care of Hartshorn's cattle after October 2012, because the implied contract only obligated them to provide care until October 2012.

[¶11.] Hartshorn, on the other hand, argues that the circuit court properly concluded that the Colburns' agister's lien was invalid because "the court gave Colburns full consideration which would be due for those services." In Hartshorn's view, the term of the parties' cattle care agreement was from April 1, 2012 to March 31, 2013, and therefore, when the cattle were sold on February 2013, the Colburns had yet to complete their obligations under the agreement. Hartshorn also asserts, by notice of review, that the court erred in finding a valid and enforceable lease and cattle care agreement because there was no meeting of the minds on certain essential terms. Yet Hartshorn advises us that despite the error, the court made an equitable decision that "was just" and can be "sustainable under the facts presented and the law applied." We, therefore, need not address Hartshorn's claim that the court erred, because "[i]f there is any basis to support the court's ruling, affirmance of its decision is proper[,]" and Hartshorn concedes there was a proper basis for the decision. *See Zoss v. Schaefers*, 1999 S.D. 105, ¶ 5, 598 N.W.2d 550, 551-52.

[¶12.]    We think it significant that the circuit court made no finding of fact or conclusion of law favoring Hartshorn's position that the term of the cattle care agreement was from April 2012 to March 2013. Rather, the court found an implied agreement based on the past practice of Hartshorn entrusting cattle to the Colburns' care, selling the cattle in October, and giving the Colburns one half the net calf sale proceeds. Because Hartshorn entrusted the cattle to the Colburns' care in October 2011, but did not sell the cattle in October 2012, the court ruled that "[t]he Colburns are entitled to one half of the net calf sale proceeds for 2012 in the amount of $21,192.37."

[¶13.]    In addressing the Colburns' additional claim under the agister's lien for caring for the cattle after October 2012, the court did not deny recovery because it found that the cattle care agreement already covered the same period, but because it concluded that the agister's lien was invalid. If the cattle care agreement ended in October 2012, as the court apparently concluded, then the fact that the Colburns were entitled to recover under the terms of their implied contract in no way invalidated their additional request for relief under the agister's lien. And, contrary to the court's conclusion, Hartshorn's possessory interest in the leased land would not, as a matter of law, mean he did not *entrust* his cattle to the Colburns for the purpose of feeding, herding, pasturing, or ranging. Nothing in SDCL 40-27-1 defeats a lien's validity when cattle are entrusted to a caretaker on the cattle owner's land. Rather, that statute provides that "[a]ny person to whom any domesticated animal shall be entrusted by the owner . . . for the purpose of feeding, herding, pasturing, or ranging shall have a lien thereon for the amount that may be

due for such service and supplies[.]" A claim under an agister's lien focuses on whether an *owner* of domesticated animals *entrusted* those animals to *any person* for the purpose of feeding, pasturing, herding, or ranging.[3]

[¶14.]    Here, the court specifically found that Hartshorn placed 58 cows and 3 bulls in the Colburns' care for the purpose of providing feed, cake, minerals, pasturing, watering, herding, calving, weaning, and arranging calf sales. The court further found that the parties' past practices included Hartshorn selling the cattle in October and paying the Colburns one half the net calf sale proceeds. Hartshorn did not sell the cattle in October 2012, which led the Colburns to impose a lien, retain possession of the cattle, and continue caring for them until their sale in February 2013. *See* SDCL 40-27-1 (the lien entitles "the person to retain possession of such domesticated animals until the amount due is paid"). The Colburns' agister's lien, therefore, was valid and the court erred in concluding otherwise. The Colburns are entitled to recover for the caretaking services and supplies provided to Hartshorn's cattle from the time they would have ordinarily been sold in October 2012.

[¶15.]    The Colburns further contend that the court erred when it failed to award them prejudgment interest. SDCL 21-1-13.1 provides that "[a]ny person who

---

3.    *Compare Hannahs v. Noah,* 83 S.D. 296, 158 N.W.2d 678 (1968) (tenant owned the livestock the landlord's mortgagor attempted to assert a lien against), *and Peyton v. Nielsen*, 60 S.D. 351, 244 N.W. 384 (1932) (no lien because tenant owned the sheep and pastured them on the leased land), *with Seremetis v. Cook*, 42 N.W.2d 135 (Mich. 1950) (landlord had given tenant possession of the livestock to be cared for, which entitled tenant to a lien and right to retain possession until lien was paid).

is entitled to recover damages, . . . is entitled to recover interest thereon from the day that the loss or damage occurred[.]" Here, the Colburns were entitled to recover damages, and therefore, under SDCL 21-1-13.1, the court was required to compute and award prejudgment interest. "Prejudgment interest is now mandatory, not discretionary." *Alvine v. Mercedes-Benz of N. Am.*, 2001 S.D. 3, ¶ 29, 620 N.W.2d 608, 614. On remand, the court is directed to award the Colburns prejudgment interest on the amounts due to them.

[¶16.] Reversed and remanded.

[¶17.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.