#31196, #31203-aff in pt & rev in pt-RG
**2026 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

JESSICA LYN SHEVLING,

Plaintiff and Appellant (#31196); Plaintiff and Appellee (#31203),

v.

DEVIN JERMAINE MAJOR,

Defendant and Appellee (#31196); Defendant and Appellant (#31203).

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

THE HONORABLE BRUCE V. ANDERSON
Judge

JESSICA LYN SHEVLING
Dayton, Ohio

Pro se appellant (#31196)
Pro se appellee (#31203).

DEVIN JERMAINE MAJOR
Winchester, California

Pro se appellee (#31196)
Pro se appellant (#31203).

CONSIDERED ON BRIEFS
MARCH 17, 2026
OPINION FILED **05/13/26**

#31196, #31203

GUSINSKY, Justice

[¶1.]       Jessica Shevling and Devin Major were married for nearly 20 years at the time of their divorce.  Both parties served in the military during their marriage. Before their divorce, the parties signed a separation agreement in July 2020 with various conditions, including the condition that Shevling would receive $1,500/month maintenance payments until their divorce was finalized, and the condition that Shevling would receive a 20% share of Major's military retirement pay when he retired.  Portions of the separation agreement were incorporated into the divorce decree in February 2021.  Major subsequently failed to pay several months of the support payments and did not pay Shevling any of the required retirement payments.  Shevling sought to hold Major in contempt of court and sought modification of the divorce decree.  The circuit court declined to hold Major in contempt of court and denied Shevling's modification request, but it reduced Shevling's share of Major's retirement pay from 20% to 16.1%.  Shevling and Major both filed separate appeals that we consolidated by order.  We affirm in part and reverse in part.

## Factual and Procedural History

[¶2.]       Jessica Shevling (Wife) and Devin Major (Husband) were married on April 14, 2001, in Maryville, Missouri, and both were serving in the armed forces at the time.[1]  Wife's service with the U.S. Navy ended in 2002, but she resumed her military service in 2020 as a commissioned U.S. Air Force officer.  In July 2020,

---

1.     Two children were born of their marriage, and both are now over the age of eighteen.

-1-

Husband and Wife were both stationed as active-duty service members in Okinawa, Japan, when they decided to separate.

[¶3.] The parties negotiated a separation agreement on July 31, 2020, and had the agreement notarized through the military Judge Advocate General's office in Okinawa. Husband had legal counsel, and Wife proceeded unrepresented despite being advised to obtain her own counsel. The relevant provisions of the separation agreement read:

> **6. Maintenance**. The Husband agrees to pay to the Wife, as and for her maintenance and support, One Thousand Five Hundred Dollars ($1,500.00) per month payable in equal monthly installments commencing on the first day of the month following the date of this Agreement, and continuing on the first day of each succeeding month, until the earlier of the death of either party or the divorce is final.
>
> [. . .]
>
> **11. Military Retirement Benefits**. The Husband agrees to pay the Wife, as a further equitable division of their property rights, 20 percent of his disposable retired pay, as defined in 10 U.S.C. Sec. 1408, from his service with a branch of the armed forces:
>
> > (a) Said payments shall be made to the Wife when the Husband receives said retired pay and shall be made to the Wife until her or the Husband dies. [. . .]
> >
> > (d) The Wife's portion of said gross retired pay shall be paid directly to her by the payer thereof from the disposable retired pay of the Husband each month, if such direct payments are legally permissible. All amounts due hereunder to the Wife and not paid directly to the Wife by the payer of the Husband's retired pay shall be paid directly by the Husband to the Wife monthly within 10 days of the receipt of the payment of retired pay by the Husband. All payments not so paid by the Husband to the Wife shall bear interest at the rate of 8% per annum from the due date until paid. The Wife and Husband understand that, due to regulations governing the

disbursement of disposable retired pay to former spouses, the amount of retired pay paid directly to the Wife may be less than the amount the Husband is obligated to pay hereunder to the Wife.

(e) "Gross retired pay" as used herein shall mean the total and full amount of retired pay due the Husband without any deductions or diminutions as is otherwise provided in 10 U.S.C. Sec. 1408 for calculating "disposable retired pay."

[. . .]

**12. <u>Military Survivors Benefit Program</u>.** Upon the Husband's retirement from the Armed Forces, the Husband shall elect to participate in the military sponsored Survivors Benefit Program and shall designate the Wife as the beneficiary thereof at the maximum rate available in the event the Wife survives the Husband. The Husband shall execute such documents to this end as may be required, however, the Wife agrees to pay either directly to the program or to the Husband any and all costs or fees associated with participating in this benefits program.

[. . .]

**15. <u>Legal Representation</u>.** In connection with this Agreement, the Husband has had the benefit of the advice of the Legal Assistance Office Camp Foster, Okinawa, Japan[,] independent counsel of his own selection. **The Wife has been advised to select and obtain counsel to represent her in this matter.**

[¶4.]     During the separation, Wife moved to Charles Mix County and instituted a pro se divorce proceeding on October 15, 2020. Wife filed a summons and complaint and attached a copy of the July 2020 separation agreement. In January 2021, the parties submitted a stipulation and settlement agreement to the court. The stipulation and settlement agreement incorporated sections 10,[2] 11, and

---

2.     Section 10 of the separation agreement related to military privileges of Husband and Wife's two children. It is not relevant to this appeal.

12 from the July 2020 separation agreement. Both parties agreed to abide by these provisions. The circuit court incorporated the stipulation and settlement agreement and entered a decree of divorce which was filed on February 4, 2021. At the time the divorce decree was entered, Husband had not paid Wife the $1,500/month maintenance payments in accordance with section 6 of the separation agreement for several months. He did, however, make a $2,500 payment to Wife in November 2020.

[¶5.] Husband later retired from the military on February 12, 2024. Pursuant to the February 2021 decree of divorce and the incorporated separation agreement, Wife was to be awarded a portion of Husband's military retirement and be designated as a recipient of his Survivor's Benefit Plan (SBP). Husband's first payment to Wife would have been due when he received his first retirement check in March 2024, but Husband did not make any of the required 20% payments in accordance with section 11 of the separation agreement and section 10 of the stipulation and settlement agreement.

[¶6.] On October 4, 2024, Wife filed a motion and affidavit for an order to show cause, alleging Husband had failed to comply with the stipulation and settlement agreement because he had not paid her 20% of his disposable retired pay for the last seven months. She also alleged he had not completed the paperwork for the SBP. In response, Husband first asserted that Wife did not provide sufficient information for the SBP election. Further, he argued that Wife did not properly apply for retirement benefits with the Defense Finance and Accounting Service (DFAS)—a Department of Defense agency that handles finance and accounting

-4-

services for military personnel—to determine an accurate dollar amount owed and to initiate automatic payments from DFAS. On November 4, 2024, the circuit court granted the order to show cause and scheduled a hearing. The hearing was continued several times before being set for February 26, 2025.

[¶7.] Before the hearing, in January 2025, Wife filed several pro se motions. The first was another motion and affidavit for an order to show cause, requesting an additional three months (ten months total) of retirement payments. On the same day, Wife filed a motion to modify the divorce decree, alleging she had "contacted the [DFAS] to set up direct payment[,] but they require[d] the divorce decree to provide" additional information as to the percentage the former spouse is awarded and the member's years of creditable service.

[¶8.] Wife attached to this motion a letter from DFAS dated October 11, 2024. The letter demonstrated that Wife had contacted DFAS and submitted an application for payment of a portion of Husband's retirement pay. Wife's application was rejected, however, and she was informed that the previous court order regarding military retirement was insufficient and did not meet legal requirements for disbursement. The letter stated: "Your application cannot be approved for the following reason(s): You must complete and submit the . . . DD Form 2293. The form may be obtained through our website . . . . The court order did not provide all the necessary elements required to calculate the division of the retirement."

[¶9.] The DFAS letter went on to describe the definition of "disposable pay" as it was revised in 2018, stating DFAS needed a "certified copy of an amended

order" which provides Husband's "high-3" amount[3] at the time of divorce, years of creditable service at the time of divorce, and a fixed amount or percentage that Wife is awarded. As it related to the SBP election, the letter explained: "If your divorce decree specifies that you are to be designated as a former spouse beneficiary for the [SBP], you must make a 'deemed election' for SBP coverage within one year of the date of your divorce or other court order requiring SBP coverage[.]" Wife was instructed to submit a DD Form 2656-10 to DFAS in order to make the SBP election.

[¶10.] After Wife's pro se motions were filed, the February 26, 2025 hearing was rescheduled for April because Husband's counsel had a conflict. The circuit court instructed Husband and his counsel to inform Wife that the hearing date had been changed. But because of Husband's counsel's failure to include Wife on an email thread, Wife did not receive notice that the hearing was rescheduled. Wife traveled from Ohio to South Dakota to appear at the hearing in February 2025. When Wife was informed that the hearing had been rescheduled and that Husband's counsel was at fault for her lack of notice, the circuit court advised her that she could move for reimbursement of travel costs, which she did. The court later awarded her $900 in travel costs for this trip. Again, during this hearing, the

---

3. The high-3 amount is determined under the provisions of federal statutory law. *See Parker v. Parker*, 2023 S.D. 5, ¶ 9, 985 N.W.2d 58, 61 (citing 10 U.S.C. § 1407(b)). For regular service, the high-3 amount is generally calculated as the quotient of "(A) the total amount of monthly basic pay to which the member was entitled for the 36 months (whether or not consecutive) out of all the months of active service of the member for which the monthly basic pay to which the member was entitled was the highest, divided by (B) 36." 10 U.S.C. § 1407(c)(1).

court encouraged Wife to obtain counsel and told her that it "would be helpful to your efforts here, but it's up to you."

[¶11.]     In March 2025, Husband filed a motion to dismiss Wife's motion to modify the divorce decree, arguing "[t]he divorce property division is final and not modifiable[.]"  In his affidavit in support, Husband represented that he had consulted with DFAS, and that DFAS needed a court order submitted along with a DD Form 2293—the form Wife needed to complete which specified the value or percentage from the formula that matches the court order.

[¶12.]     In April 2025, Wife filed another pro se motion for modification of the property division, alleging she was now entitled to 42% of Husband's retirement pay instead of the 20% awarded via divorce decree.  She claimed this was so "based on the military calculation of retirement pay to former spouses."  She again reiterated her claim that Husband had not paid her several $1,500/month maintenance payments owed under the July 2020 separation agreement.  She further alleged Husband engaged in "fraudulent conduct and unconscionable actions" related primarily to child custody and living arrangements, and that this was grounds to modify the property division in the stipulation agreement.

[¶13.]     A hearing was held on all pending motions on April 23, 2025.  Husband was represented by legal counsel, and Wife, pro se, appeared remotely.  At the hearing, Wife asked the court to modify the 20% retirement allotment in the stipulation agreement, "given [Husband's] actions, and how he changed everything that [she] had agreed to and the relationship during . . . [their] marriage, during the separation and after the divorce have been due to the [sic] not following court

orders." Husband objected, insisting that it was well-established that property division agreements could not be modified. The court agreed and denied Wife's motion to modify the division.

[¶14.] On the contempt issue, the court found that the underlying order was "vague, mostly because it was done on a pro se basis. And it's insufficient presently to form the basis of a contempt motion." Because the order was vague, Husband "didn't know how much [he was obligated to pay Wife out of his retirement pay] and couldn't comply with the order. . . . The order is simply too vague and convoluted at this time for [the court] to find that he willfully and contumaciously disobeyed a court order."

[¶15.] On the issue of the missed $1,500/month maintenance payments, Husband argued that the parties waived support in the divorce decree, and that he has paid all the support owed in the separation agreement. Wife replied that Husband did not make payments from October 2020 to February 2021. The court made the same finding as it did in relation to the missed retirement payments— that Husband could not be held in contempt because the order was vague and unclear. But the court noted that it had "to decide if [Wife] gets any undue balance on the [$1,500/month]."

[¶16.] On July 24, 2025, the circuit court entered an order and a written memorandum decision. It emailed its decision, including its findings of fact and conclusions of law, to both parties and specified that "[t]his email is intended as notice of entry of the [c]ourt's decision and will be printed and filed by the Clerk." In its decision, the circuit court did not hold Husband in contempt of court for

nonpayment, as it was Wife's "obligation to get a proper [c]ourt order for deduction from the Department of Defense." The court also noted the "complicated nature of calculating the retirement pay portion awarded to Wife" and that "questions as to the amount and calculation thereof and the lack of clarity in this [c]ourt's decree" existed at the time Husband was expected to make payments.

[¶17.]     The court stated: "It was the parties' intent that the Wife was to receive 20 percent of the amount allowed under § 1408, as may be calculated by the Department of Defense. No further interpretation needs to be made in order to resolve this issue. The Wife will receive 20 percent of the current amount allowed as per § 1408, including any additions thereto by cost-of-living adjustments or otherwise as deemed appropriate or allowable under 10 U.S.C. 1408."

[¶18.]     The court then awarded Wife "a percentage of the marital portion of [Husband's] disposable military retired pay, which is computed by multiplying 20 percent (20%) times the fraction, the numerator of which is 238 months of marriage during [Husband's] creditable military service, divided by [Husband's] total number of months of creditable service, which is 295 months." This calculation reduced Wife's share of Husband's disposable retirement pay from 20% to 16.1%. The court then directed DFAS to calculate Husband's disposable retired pay in accordance with 10 U.S.C. § 1408. In the meantime, it ordered Husband to immediately start paying 20% of his current retirement payments, and that the amounts would be later adjusted for any over or under payment.

[¶19.]     With regard to back-due maintenance and support, the court found husband owed $5,000, computed by adding five months of missed payments and

subtracting the credited $2,500 payment in November 2020. The court ordered Husband to pay 8% interest on the missed payments. With regard to the SBP election, the court found the parties agreed in section 12 of their separation agreement that Husband would enroll in the SBP and designate Wife as his beneficiary. It then gave Husband 30 days to file the paperwork necessary to get the benefits in place, allowing Wife to file further motions for relief if such paperwork was not filed.

[¶20.] On Wife's motion to modify the property distribution due to fraud and coercion, the court found:

> [T]here has been no fraud and . . . both parties are at fault in the current situation. Wife was the one who prepared the divorce papers and submitted them to the [c]ourt, and she was the one who would have been notified, upon reading the South Dakota Unified Judicial System pro se forms, that she needed to seek legal assistance in making sure that her decree was proper and correct for her to be able to receive her share of Husband's retirement benefits. This she did not do.

[¶21.] Wife filed a notice of appeal in Appeal No. 31196. On August 25, 2025, Husband filed a motion for a new trial, a Rule 60(b) motion for relief from judgment, and a notice of appeal. Husband's appeal was docketed as Appeal No. 31203.[4] We entered an order consolidating the appeals. In appeal No. 31196, Wife raises the following issues for our review:

1. Whether the circuit court abused its discretion when it denied Wife's motion to vacate the divorce decree.

2. Whether the circuit court erred in calculating Wife's share of Husband's retirement payment.

---

4. Husband's counsel withdrew from the case in September 2025.

3. Whether the circuit court erred in applying an 8% interest rate to Husband's maintenance and support arrearages.

4. Whether the circuit court erred in calculating Husband's maintenance and support arrearages.

5. Whether the circuit court committed clear error in dismissing Wife's motions for contempt of court.

6. Whether the circuit court abused its discretion by denying Wife's request for a universal life insurance policy instead of a Survivor Benefit Plan.

7. Whether the circuit court violated Wife's due process rights under the Fourteenth Amendment.

[¶22.] In Appeal No. 31203, Husband raises one issue for our review: whether the circuit court abused its discretion in declining to take testimony at the April 2025 motions hearing.

## Analysis

### *Wife's Appeal No. 31196*

> 1. ***Whether the circuit court abused its discretion when it denied Wife's motion to vacate the divorce decree.***

[¶23.] "The circuit court's decision to grant or deny relief under Rule 60(b) will not be disturbed on appeal unless the circuit court abused its discretion." *Estate of Mack*, 2025 S.D. 7, ¶ 13, 17 N.W.3d 874, 879 (quoting *Hiller v. Hiller*, 2015 S.D. 58, ¶ 21, 866 N.W.2d 536, 543). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Id.* (quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850). "Pursuant to an abuse of discretion standard of review, factual determinations are subject to a clearly erroneous standard." *Id.* (quoting *State v. Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d 201, 203).

Under the clearly erroneous standard, "we will only reverse when we 'are left with a

definite and firm conviction that a mistake has been made' after [undertaking] a

thorough review of the evidence." *Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d

219, 222 (citation modified). In reviewing findings for clear error:

> The question is not whether this Court would have made the
> same findings that the trial court did, but whether on the entire
> evidence we are left with a definite and firm conviction that a
> mistake has been committed. This Court is not free to disturb
> the lower court's findings unless it is satisfied that they are
> contrary to a clear preponderance of the evidence. Doubts about
> whether the evidence supports the court's findings of fact are to
> be resolved in favor of the successful party's "version of the
> evidence and of all inferences fairly deducible therefrom which
> are favorable to the court's action."

*Id.* (quoting *Osman v. Karlen & Assocs.*, 2008 S.D. 16, ¶ 15, 746 N.W.2d 437, 442–

43).

[¶24.]       In May 2025, Wife moved the circuit court under Rule 60(b)(3)[5] "to

reconsider its dismissal of the contempt motion and to modify the property division

set forth in the divorce decree." The motion was brought on grounds of "fraud,

misrepresentation, misconduct, and duress, and in accordance with SDCL 25-4-41,

which mandates an equitable distribution of marital property." These complaints

primarily arose out of Husband's failure to pay Wife her portion of his retirement

and the $1,500/month support payments. Wife attached voluminous records to her

---

5.      On appeal, Wife argues the application of Rule 60(b)(6). Because her motion
        in front of the circuit court was made under Rule 60(b)(3), however, we
        consider her arguments under that subsection. *See Hauck v. Clay Cnty.
        Comm'n*, 2023 S.D. 43, ¶ 4 n.4, 994 N.W.2d 707, 709 n.4 ("Arguments not
        raised at the trial level are deemed waived on appeal." (citation omitted)).

motion, including many text messages and documented communications between Husband and Wife.

[¶25.]     The circuit court considered Wife's motion and her attached exhibits and addressed them in its July 24, 2025 decision.  In its decision, the court found that "there has been no fraud and that both parties are at fault in the current situation. . . . Some of the problems that are currently in front of the [c]ourt are due to these errors on behalf of the Wife.  She cannot now get relief because of her own pro se legal work deficiencies."  Thus, the court found no coercion or fraud to justify relief.

[¶26.]     On the record before us, this finding was not clearly erroneous.  Other than conclusory arguments, Wife did not present any evidence indicating Husband coerced Wife into signing either the separation or stipulation agreement.  In fact, Wife was the one who prepared the pro se forms and filed for divorce in Charles Mix County.  The court's finding is further supported by the fact that, by the court's own admission, the court's previous order was unclear and did not provide Husband or DFAS with proper direction in how to divide Husband's retirement.  Denying Wife's motion for Rule 60(b) relief was not a choice outside the range of permissible choices.

[¶27.]     In a similar argument, Wife argues the property division was procedurally and substantively unfair based on the amount of assets awarded to her and the fact that she agreed to accept only 20% of Husband's retirement, demonstrating what she claims is a "clear imbalance in asset distribution."  In front of the circuit court, Wife sought modification of the order to award her 40% or 42%

of Husband's military retirement instead of 20%. On appeal, she argues for the first time that she should be awarded "fifty percent of [Husband's] total military retirement." In an affidavit, Wife claims that she "conceded substantial rights during the divorce proceedings" while "unrepresented by counsel and under significant duress." She further claims these "concessions were made without informed legal advice and under circumstances that did not allow for fair negotiation."

[¶28.]    The circuit court recognized these concerns, but concluded:

> Wife was the one who prepared the divorce papers and submitted them to the [c]ourt, and she was the one who would have been notified, upon reading the South Dakota Unified Judicial System pro se forms, that she needed to seek legal assistance in making sure that her decree was proper and correct for her to be able to receive her share of Husband's retirement benefits.

[¶29.]    With respect to the July 2020 separation agreement, section 15 confirms Wife was informed she should obtain her own independent counsel. Wife voluntarily chose to forego the option to obtain legal counsel of her own. Nothing in the record indicates the parties did not enter both the July 2020 separation agreement and the divorce stipulation agreement freely and knowingly. "Absent fraud or some other reason which would apply to any judgment, a divorce decree which incorporates a property settlement agreement is a final and conclusive adjudication and is not subject to later modification." *Beermann v. Beermann*, 526 N.W.2d 127, 129 (S.D. 1995) (citing *Jeffries v. Jeffries*, 434 N.W.2d 585, 588 (S.D. 1989)). The circuit court did not abuse its discretion in refusing to grant Wife Rule 60(b) relief or modify the property division.

## 2. *Whether the circuit court erred in calculating Wife's share of Husband's retirement payment.*

[¶30.] In its July 24, 2025, order, the circuit court found that it needed to "enter an amended or supplemental decree to comply with the parties' initial intent as laid out in their stipulation and agreement in the divorce decree and the incorporated separation agreement." This was so because the original order was unclear and did not allow for DFAS to properly calculate the share of Husband's retirement pay that Wife was entitled to.

[¶31.] "We have treated 'military retirement benefits . . . like any other asset of the marriage and . . . subject to equitable distribution.'" *Parker v. Parker*, 2023 S.D. 5, ¶ 18, 985 N.W.2d 58, 63 (quoting *Porter v. Porter*, 1996 S.D. 6, ¶ 9, 542 N.W.2d 448, 450). We review the division of marital assets upon divorce for an abuse of discretion, but "an error of law in a circuit court's equitable division of property 'is never within the [discretionary] range of permissible choices and necessarily constitutes an abuse of discretion.'" *Id.* (alteration in original) (quoting *Field v. Field*, 2020 S.D. 51, ¶ 15, 949 N.W.2d 221, 224).

[¶32.] "Divorce stipulations are governed by the rules of contract; their interpretation is a matter of law for the courts to decide." *Coffey v. Coffey*, 2016 S.D. 96, ¶ 8, 888 N.W.2d 805, 808 (quoting *Hisgen v. Hisgen*, 1996 S.D. 122, ¶ 4, 554 N.W.2d 494, 496). "Matters of contract interpretation are questions of law reviewed de novo, and '[w]hen interpreting a contract, this Court looks to the language that the parties used in the contract to determine their intention.'" *Suvada v. Muller*, 2022 S.D. 75, ¶ 28, 983 N.W.2d 548, 558 (alteration in original) (quoting *Charlson v. Charlson*, 2017 S.D. 11, ¶ 16, 892 N.W.2d 903, 908). "In order to ascertain the

terms and conditions of a contract, we examine the contract as a whole and give words their plain and ordinary meaning." *Id.* (citation omitted). "When the meaning of contractual language is plain and unambiguous, construction is not necessary." *Coffey*, 2016 S.D. 96, ¶ 9, 888 N.W.2d at 809 (quoting *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726).

[¶33.] Wife argues the circuit court erred when it "reduc[ed Wife's] agreed 20% share of [Husband's] military retirement pay to [16.1%]." Wife claims the court ignored the separation agreement and instead applied the "frozen benefit rule" to reduce the payment. The "frozen benefit rule" is a change enacted by congressional amendments under the National Defense Authorization Act for Fiscal Year 2017. We recently explained the rule in *Parker v. Parker*:

> Under the frozen benefit rule, the date of divorce serves as a hypothetical retirement date for the purpose of calculating the former spouse's equitable share of a military spouse's retirement, the rationale being that it would be inequitable for the former spouse to receive a share of the retired pay based upon pay increases that occurred between the date of divorce and the member's actual date of retirement "to which the former spouse made no contribution."

2023 S.D. 5, ¶ 23, 985 N.W.2d at 64 (quoting *Fulgium v. Fulgium*, 203 A.3d 33, 40 (Md. Ct. Spec. App. 2019)).

[¶34.] Here, the language of the agreement reads: "the Husband agrees to pay the Wife, as a further equitable division of their property rights, 20 percent of his disposable retired pay, as defined in 10 USC § 1408, from his service with a branch of the armed forces[.]" In the circuit court's decision, the court recognized both that the parties agreed to Wife's 20% share of Husband's military retirement, and that 10 U.S.C. § 1408 instructs the court and governs what constitutes

"disposable retired pay" when calculating this amount. The circuit court then applied a coverture calculation[6] to the agreed upon 20% figure to calculate the marital portion of Husband's retirement pay, finding that "Wife's share of the retirement based upon 'disposable retired pay' is not just simply 20 percent of what Husband is currently receiving, but rather she gets a percentage of his retirement that was earned during the marriage."

[¶35.]     The court found Husband served 238 months during the parties' marriage, and that his total number of months of creditable service was 295 months. To determine the marital portion of Husband's retirement pay subject to division, the court divided the fraction, the numerator of which is 238 months of marriage during service, and the denominator of which is the member's total months of creditable service, 295 months. Then, to determine Wife's share, the circuit court multiplied the fraction by the 20% figure agreed upon by the parties. The application of this formula resulted in a figure equal to 16.1%. This computation comports with the frozen benefit rule in that it limits Wife's share to Husband's retirement pay by freezing the award at the date of the judgment. But the circuit court's coverture calculation goes further than the frozen benefit rule and also limits Wife's share to the retirement pay earned during the marriage, thereby excluding Husband's creditable service months earned during his service but prior to the parties' marriage. This application does not comport with section 11 of the parties' signed agreement.

---

6.     A coverture calculation is a general method of determining the marital portion of a pension or retirement benefit.

[¶36.] The plain and unambiguous language of the parties' agreement awards Wife "20 percent of [Husband's] disposable retired pay, as defined in 10 USC § 1408, from his service with a branch of the armed forces[.]" The term "disposable retired pay" is defined in 10 U.S.C. § 1408 as "the total monthly retired pay to which a member is entitled" less amounts for statutory deductions inapplicable in this case. 10 U.S.C. §1408(4)(A)–(B). The section does not require the court to apply a coverture calculation to exclude months of creditable service earned prior to the marriage.

[¶37.] According to the letter Wife received from DFAS, in order for DFAS to calculate the amount that must be withheld from the retiring spouse's retirement check, DFAS simply needs a divorce decree or property settlement order specifying "[a] fixed amount, a percentage, a formula or a hypothetical that the former spouse is awarded[.]" Here, that percentage was the 20% the parties agreed to, and nothing in section 11 of the agreement limits Wife's share of Husband's disposable retired pay to amounts earned during the marriage. The plain language of the agreement awards Wife 20% of Husband's disposable retired pay "from his service with a branch of the armed forces," and the failure to account for Husband's creditable pre-marital service was error. We reverse and remand to the circuit court with instructions to award Wife 20% of Husband's disposable retirement pay.

> **3.     Whether the circuit court erred in applying an 8% interest rate to Husband's maintenance and support arrearages.**

[¶38.] The same rules of contract interpretation discussed above apply to the court's application of contractual interest rates to Husband's arrearages, and we

again review these applications de novo. *Suvada*, 2022 S.D. 75, ¶ 28, 983 N.W.2d at 558.

[¶39.]     Wife argues the circuit court misinterpreted the separation agreement and misapplied an 8% interest rate to Husband's maintenance and support arrearages. Instead of applying the 8% interest rate, Wife claims the court should have applied the statutory 10% interest rate under SDCL 54-3-16. Under SDCL 54-3-5.1: "Interest is payable on all judgments and statutory liens, . . . exclusive of support debts or judgments under § 25-7A-14, at the Category B rate of interest as established in § 54-3-16 from and after the date of judgment[.]" Here, the judgment for maintenance and support was not covered under SDCL 25-7A-14 as a support debt or judgment providing for the "support and maintenance of a child" as defined in SDCL 25-7A-1. Rather, it was a temporary spousal support and maintenance provision to provide Wife with $1,500/month while the divorce was pending. As such, the arrearages would be subject to the standard Category B statutory rate of 10% per year. SDCL 54-3-16(2). Instead of applying the Category B rate, the circuit court applied an 8% interest rate that it deemed to be the contractual rate.

[¶40.]     But the 8% interest rate that the circuit court used is referenced only in section *11* of the parties' July 2020 separation agreement—the section titled "Military Retirement Benefits." There is no mention of an interest rate in section 6 titled "Maintenance," the provision under which Wife seeks the $1,500/month back-due payments. In the plain language of the parties' July 2020 separation agreement, they did not agree to an interest rate on maintenance arrearages. As demonstrated by their agreement in section 11, if the parties had intended to agree

to an interest rate on maintenance arrearages, they could have done so. The terms of section 6 of the separation agreement are unambiguous, and no provision requires an 8% interest rate be applied to missed support payments. We reverse and remand with instructions to apply the statutory 10% interest rate to such arrearages.

### 4. *Whether the circuit court erred in calculating Husband's maintenance and support arrearages.*

[¶41.] Under section 6 of the separation agreement, the court found Husband owed Wife $5,000, calculated by five missed support payments of $1,500—October 2020, November 2020, December 2020, January 2021, and February 2021—subtracted by the $2,500 payment in November 2020. Wife claims the circuit court's grant of $5,000 in missed support payments was "arbitrary and lacked any factual and legal basis." Instead, she claims, the circuit court should have awarded her $8,133.63 based on her detailed spreadsheet and bank statements. The additional monies Wife claims she is owed come from alleged retained COVID stimulus checks and federal tax refunds. Husband's retention of these payments, she alleges, constitutes "unjust enrichment," and that the proper remedy would be to credit Wife with a portion of these funds.

[¶42.] But the circuit court found "no evidence and [saw] no argument in the record as far as any obligation to reimburse each other for COVID stimulus payments. If there was an issue in that regard, it needed to be included in the divorce stipulation." The issue Wife presented to the circuit court was confined to whether Husband owed Wife any of the $1,500/month maintenance payments in accordance with their separation agreement. The court addressed that issue by

calculating Husband's arrearages and awarding Wife $5,000 plus interest. Wife cites no authority on appeal and presented no evidence to the circuit court to support the assertion that the court was required to consider stimulus payments or tax returns when calculating the amount owed under the provisions of the agreement, and we decline to read such a requirement into the parties' agreement. The circuit court did not err in calculating Husband's maintenance and support arrearages.

**5.     *Whether the circuit court committed clear error in dismissing Wife's motions for contempt of court.***

[¶43.]     "The purpose of the civil contempt power is to force a party to comply with orders and decrees issued by a court in a civil action." *Taylor v. Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d 458, 470–71 (citation modified). "The required elements for . . . civil contempt are (1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Id.* (omission in original) (quoting *Keller v. Keller*, 2003 S.D. 36, ¶ 9, 660 N.W.2d 619, 622). "To form the basis for a subsequent finding of contempt, an order must state the details of compliance in such clear, specific and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon her." *Id.* (quoting *Keller*, 2003 S.D. 36, ¶ 10, 660 N.W.2d at 622). "We review a trial court's findings as to contempt under a clearly erroneous standard." *Muenster v. Muenster*, 2009 S.D. 23, ¶ 15, 764 N.W.2d 712, 717 (quoting *Driscoll v. Driscoll*, 1997 S.D. 113, ¶ 10, 568 N.W.2d 771, 773).

[¶44.]     With regard to Husband's obligation to pay Wife 20% of his disposable retirement pay, it is undisputed that a court order existed requiring Husband to pay

Wife. It is also undisputed that Husband was aware of this order and had the ability to comply with the order. Thus, the only relevant element here is whether Husband's actions amounted to willful or contumacious disobedience of the order.

[¶45.] Wife argues the circuit court erred in dismissing her contempt motions, alleging she presented significant evidence identifying Husband's missed maintenance payments and retirement arrears. She highlights Husband's "pattern of noncompliance" and alleges the circuit court dismissed these contempt counts "without findings or hearings." But the circuit court addressed Wife's motion for contempt both at the April 2025 hearing and in its July 2025 order. The circuit court found, "due to the disputes and legitimate questions that arose as to the actual amount that [Husband] owed, as well as problems with the [d]ecree wife prepared *pro se*, that he is not in contempt of [c]ourt as his actions are not willful or contumacious." The court also found it relevant that, upon Wife's application to DFAS to honor the decree, she was informed the order was incomplete and insufficient to begin withholding Husband's retirement pay.

[¶46.] The terms and details of compliance in the first court order requiring Husband to pay Wife 20% of his retirement pay were not "clear, specific and unambiguous" as is required for a finding of contempt. *Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d at 471. The incomplete and insufficient nature of the court's original judgment is further highlighted by the current disputes over what is owed and how to calculate such payments. Based on the incomplete decree, it was not clearly erroneous to find Husband did not willfully or contumaciously disobey the court's order.

[¶47.] With regard to the back due support and maintenance payments, the circuit court also found Husband had not willfully or contumaciously disobeyed the court's order. But here, there was no court "order" as it related to the back due maintenance payments. Husband agreed to pay Wife $1,500/month in accordance with the terms of section 6 of the July 2020 separation agreement, but only sections 10, 11, and 12 were incorporated into the stipulation agreement and divorce decree. The first element of civil contempt is "the existence of an order." *Id.* Here, no such order exists. Because we conclude no court "order" existed to support a contempt motion on the $1,500/month payments, we need not address the merits of the issue and accordingly affirm the court's order denying Wife's motion to hold Husband in contempt on the maintenance payments. *See Colburn v. Hartshorn*, 2013 S.D. 92, ¶ 11, 841 N.W.2d 267, 270 ("[I]f there is any basis to support the court's ruling, affirmance of its decision is proper[.]").

### 6. *Whether the circuit court abused its discretion by denying Wife's request for a universal life insurance policy instead of a Survivor Benefit Plan.*

[¶48.] Wife argues the circuit court should have awarded her a universal life insurance plan in lieu of the SBP that the parties agreed to in both the separation agreement and the stipulation agreement. In the record before us, the only mention Wife makes of a universal life insurance policy is in a proposed conclusion of law filed on June 17, 2025: "I respectfully request that the [c]ourt . . . [s]ubstitute financial protection in the form of a life insurance policy on [Husband's] life, in lieu of the Survivor Benefit Plan coverage not effectuated by [Husband], as authorized by this Order." Wife did not mention nor make any argument related to this

request in her motion briefs or during the April 2025 hearing, and the circuit court did not have the opportunity to consider the request. "It is a general rule of procedure that an appellate court does not address issues parties raise for the first time on appeal[.]" *Reidburn v. S.D. Dep't of Lab. & Reg.*, 2024 S.D. 19, ¶ 26, 5 N.W.3d 834, 840 (citing *In re LAC Mins. (USA), LLC*, 2017 S.D. 44, ¶ 14, 900 N.W.2d 283, 289). As a result, this issue is waived, and we decline to address it.

### 7. *Whether the circuit court violated Wife's due process rights under the Fourteenth Amendment.*

[¶49.] The Fourteenth Amendment of the United States Constitution guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. We review alleged constitutional violations de novo. *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 44, 667 N.W.2d 651, 665. Wife makes a host of claims related to the circuit court's alleged bias against her. She claims primarily that the circuit court did not consider her submitted exhibits and that the court selectively applied interest rates based on her status as a pro se litigant. These errors, on her account, "deprived [her] of a meaningful opportunity to be heard" and violated her Fourteenth Amendment right to a fair and impartial hearing.

[¶50.] On the record before us, however, we find no such evidence of bias. The hearing transcript evidences the circuit court's willingness to accept Wife's evidence, including the large packet of exhibits which it received on the morning of the April 2025 motions hearing. The court again referred to the exhibits Wife submitted after the motions hearing in its memorandum decision: "[t]his [c]ourt has reviewed Wife's Exhibit 27 submitted to the [c]ourt on June 16, 2025. . . . This chart

is confusing to the [c]ourt, but her interest calculations appear to be correct." The circuit court did not disregard Wife's evidence as "too complicated" as she argues in her brief. Rather, the court recognized the patently difficult task of calculating the amount Wife was owed, indicating "[t]he [c]ourt is unable to decipher exactly how Wife reached [the amounts she claims she is owed in Exhibit 27]." "We presume our trial judges act impartially unless a specific and substantial showing can be made to the contrary." *State v. Good Plume*, 2011 S.D. 27, ¶ 6, 799 N.W.2d 717, 719 (citing *State v. Page*, 2006 S.D. 2, ¶ 16, 709 N.W.2d 739, 750). No such specific and substantial showing has been made in this case, and we conclude the circuit court did not violate Wife's due process rights under the Fourteenth Amendment.

### Husband's Appeal No. 31203

[¶51.] Husband identifies several issues on appeal in the "Statement of Legal Issues" section of his brief.[7] He makes argument on only one, however. "Failure to cite relevant supporting authority [on appeal] is a violation of SDCL 15-26A-60(6) and is deemed a waiver." *Kostel v. Schwartz*, 2008 S.D. 85, ¶ 34, 756 N.W.2d 363, 377 (footnote omitted) (citing *State v. Boston*, 2003 S.D. 71, ¶ 27, 665 N.W.2d 100, 109). By failing to make any argument on these issues, Husband has waived them on appeal. Accordingly, we address the one issue argued in his briefing: whether the circuit court abused its discretion in declining to take testimony at the April 2025 motions hearing.

---

7. Husband was represented by counsel throughout the proceedings, but his counsel withdrew after the notice of appeal was filed.

[¶52.]     Husband claims that he was denied the opportunity to present exhibits and evidence at the April 2025 hearing, and that "[t]hese actions constitute due process violations." Similarly, Husband argues the circuit court violated his due process rights when it "failed to require sworn testimony and did not review [his] exhibits, resulting in a ruling unsupported by the record." On the record before us, however, Husband did not submit exhibits to the court ahead of the April 2025 hearing as Wife did. He instead presented only one affidavit for the court's consideration. He cannot now argue that the court did not consider exhibits which he simply did not present to it.

[¶53.]     In regard to his claim that the circuit court should have taken sworn testimony, Husband did not offer live testimony, nor did he object to the court's reliance on the evidence in the record. *See, e.g.*, *Trumble v. Trumble*, 2025 S.D. 65, ¶ 31, 27 N.W.3d 919, 928 (underscoring the circuit court's discretion in declining to require oral testimony where "neither party offered live testimony nor objected to the court's reliance on affidavits"). The circuit court did not abuse its discretion in declining to take sworn testimony at the April 2025 motions hearing.

## Conclusion

[¶54.]     We conclude the circuit court erred both when it reduced Wife's share of Husband's retirement pay from the agreed upon 20% to 16.1% and when it applied an 8% interest rate instead of the statutory 10% interest rate to Husband's maintenance arrearages. We reverse and remand with instructions to award Wife 20% of Husband's disposable retired pay in accordance with section 11 of the

separation agreement and to apply the statutory 10% interest rate to Husband's maintenance arrearages.  We affirm on all other issues.

[¶55.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.